LOCAL 369, BAKERY & CONFEC-
TIONERY WORKERS INTERNA-
TIONAL UNION OF AMERICA,
AFL–CIO, Plaintiff-Appellant,

v.

COTTON BAKING COMPANY, INC.,
Defendant-Appellee.

No. 74–3111
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

June 18, 1975.

Rehearing and Rehearing En Banc
Denied Sept. 25, 1975.

---

\* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir. 1970, 431 F.2d 409.

Robert J. Martin, Jr., Atlanta, Ga., James R. Jeter, Shreveport, La., for plaintiff-appellant.

William F. Banta, New Orleans, La., for defendant-appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

GEWIN, Circuit Judge:

The appellant local of the Bakery & Confectionery Workers International Union of America, AFL–CIO (the Union) seeks reversal of the district court's order modifying an arbitrator's award of damages against an employer. See 377 F.Supp. 1172 (W.D.La.1974). Because we conclude that under the decisions in the *Steelworkers* trilogy[1] the parties are bound by the arbitrator's decision in this case, we reverse.

The facts are undisputed. The Union and the Cotton Baking Company (the Company) are parties to a collective bargaining agreement which explicitly provides for a grievance procedure to cover "any grievance or dispute . . . whether on the part of the Union or the Employer." Should the parties fail to settle the grievance, the matter "may be submitted to an arbitrator for the final and binding arbitration thereof."

The basis of the union's complaint was the company's alleged assignment of work to members of another union in violation of the collective bargaining agreement. The job in question was the unloading of old bread from relay trucks when they returned to the company's bakery at the end of each day. The union, claiming that member dock porters were entitled to perform this work, challenged the company's assignment of the unloading to the relay truck drivers, members of another union. The union filed a grievance petition with the company, and when that failed, submitted the matter to "final and binding arbitration" pursuant to the contract. The arbitrator found that the union had exclusively unloaded the trucks at the company docks for at least four years prior to the execution of the present contract and that this arrangement concerning work assignments thereby became incorporated in the collective bargaining agreement. Under the disputed work assignment policy in this case, one dock porter remained in his original capacity while a second one was transferred to another job which actually commanded a higher salary. The arbitrator nonetheless concluded that the union was damaged by the denial of a work opportunity:

> While the job is the lowest paid classification in the Agreement, all employees have a contractual right under the seniority provisions to bump down to that job should a layoff occur. The fact that there is one less job to bump down to, erodes the bargaining rights provided for in the agreement.

> Moreover, there is no question that there is presently one less job for the members of the union. The transfer resulted in the loss of a job by the unit which seriously affects the job security of its members . . . Whether it is one job or many, a contract is a contract and rights there under need be enforced. Otherwise, the jobs of a Union under the Agreement could be taken away one by one and a greater percentage of the jobs under its jurisdiction ultimately eroded.

The arbitrator thus concluded that the company had violated the contract by denying dock unloading tasks to union members and he awarded monetary damages to the union in the amount of one year's wages for a dock porter. In

1. United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

this Section 301[2] action to enforce the arbitrator's award, the company does not dispute the determination that the union members are entitled to this job. Rather it challenges the remedy as an imposition of punitive damages and consequently beyond the scope of the arbitrator's power. The district court accepted the company's argument and reduced the damages award to $78.00, the amount of dues lost by the union because of the work loss. We reverse because we find that the arbitrator's decision was rendered pursuant to authority granted by the collective bargaining agreement and because we recognize that the judiciary owes considerable deference to the decisions of labor arbitrators.

The controlling standards for federal judicial scrutiny of labor dispute arbitration are articulated in the Supreme Court's *Steelworkers* trilogy. A dominant theme of these cases is that the federal judiciary must, in instances in which the arbitrator is acting within the bounds of his contractual authority,[3] defer to the arbitrator's decision on the merits of the dispute.

> The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator.

United Steelworkers of America v. American Mfg. Co., *supra*, 363 U.S. at 568–69, 80 S.Ct. at 1346, 4 L.Ed.2d at 1407. See also International Union of Dist. 50, U.M.W. v. Bowman Transportation, Inc., 421 F.2d 934 (5th Cir. 1970);

Gulf States Telephone Co. v. Local 1692, International Brotherhood of Electrical Workers, 416 F.2d 198 (5th Cir. 1969) and cases cited in fn. 4; Safeway Stores v. American Bakery & Confectionery Workers Internat'l Union, Local 111, 390 F.2d 79 (5th Cir. 1968). Furthermore, the arbitrator must also be left free to decide more than which party is right or which party is wrong. Having found a contract violation, he must fashion a remedial order to bring the parties' actions in conformity with the contract and make reparation for past infringements. A collective bargaining agreement may not specify the relief required for every conceivable contractual violation, so the arbitrator must often rely on his own experience and expertise in formulating an appropriate remedy. In view of the variety and novelty of many labor-management disputes, reviewing courts must not unduly restrain an arbitrator's flexibility:

> When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations.

United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. at 597, 80 S.Ct. at 1361, 4 L.Ed.2d 1428. See also United Steelworkers of America v. United States Gypsum Co., 492 F.2d 713 (5th Cir. 1973); International U. of Dist. 50, U.M.W. v. Bowman Transportation, Inc., *supra*; Lodge No. 12, Dist. No. 37, Intl. Assn. Machinists v. Cameron Iron Works, 292 F.2d 112, 119 (5th Cir. 1961), cert. denied, 368 U.S. 926, 82 S.Ct. 361, 7 L.Ed.2d 190 (1961); Tobacco

---

**2.** Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

**3.** As the Court noted in United Steelworkers of America v. Enterprise Wheel & Car Corp., *supra*,

> an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not dispense his own brand of industrial justice. He may of

course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's awards manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

363 U.S. at 597, 80 S.Ct. at 1361, 4 L.Ed.2d at 1428.

Workers Int. U., Local 317 v. Lorillard Corp., 448 F.2d 949 (4th Cir. 1971).

■ The district court reasoned that the arbitrator's award could not be compensatory since the company's assignment of work to the rival union caused no injury to the union here involved. Since the damages awarded were not compensatory, the court concluded, they must be punitive, and as such are not permitted under the contract. The court placed substantial reliance on International Union of Operating Engineers v. Mid-Valley, Inc., 347 F.Supp. 1104 (S.D. Tex.1972). In that case an arbitrator accepted the union's contention that the contract required that the company hire men to operate certain machinery. The arbitrator ordered that the company hire men to perform this task but the company did not comply. The arbitrator thereupon ordered that the employer pay the union damages equal to wages which would have been earned from the time the machinery became operative until the date of his decision, and from the date of the decision until that time at which the company complied. The district court disallowed the award as to the first time segment, finding that it was punitive rather than compensatory since it bore no relationship to encouraging compliance with the contract and constituted payment which union members did not earn.

While we render no judgment as to the validity of the *Mid-Valley* decision, we find its rationale inapplicable to this case, and even if applicable, it is not binding on this court. The provisions of the collective bargaining agreement relating to grievance and arbitration procedures are brief but unequivocal: they apply to "any dispute . . . whether on the part of the Union or the Employer." Acting pursuant to the authority granted in this provision, the arbitrator concluded that the company's work assignment policies denied the union members work opportunities to which they were entitled under the contract. Not only were fewer union members drawing salaries from the company because of this arrangement, but the job security of all union members was indirectly effected because there were fewer jobs to "bump down" to in the event of layoffs. After examining these circumstances, the arbitrator determined that the union was monetarily damaged and ordered an appropriate award.[4] The record indicates that the contract authorized arbitration of the dispute in question and supports the arbitrator's choice of remedies. In these circumstances, the district court erred in modifying the arbitrator's award.

The district court also denied the union's request for attorney's fees, relying on the general rule in this circuit that a trial court has authority to award attorney's fees where it determines that a party was unjustified in refusing to abide by an arbitrator's award. See International U. of Dist. 50, U.M.W. v. Bowman Transportation, Inc., *supra*. After concluding that the damages award was punitive and hence unwarranted, the district court noted simply that "[f]or obvious reasons, the refusal [to comply] was not without justification in this case." 377 F.Supp. at 1176. Because we have reached a different conclusion on the merits of this dispute, we remand the case to the district court for a determination as to the propriety of awarding attorney's fees.

Reversed and remanded.

4. The parties apparently anticipated the possibility of a monetary award based on a dock porter's salary. Prior to submission of the dispute to arbitration, the parties agreed that this matter was a proper one for arbitration and that should the arbitrator enter a monetary award, the amount should be limited to the wages of a dock porter for six months.