### DANIEL CONSTRUCTION COMPANY, A DIVISION OF DANIEL INTERNATIONAL CORPORATION, Appellant,

v.

### INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 513, Appellee.

No. 83–2221.

United States Court of Appeals, Eighth Circuit.

Submitted May 18, 1984.

Decided June 29, 1984.

Thompson, Mann & Hutson, Robert T. Thompson, Jr., M. Lee Daniels, Greenville, S.C., Shepherd, Sandburg and Phoenix, John C. Shepard, Richard L. Prebil, St. Louis, Mo., for Daniel Const. Co., appellant.

Jean F. Souders, Gruenberg, Souders & Levine, St. Louis, Mo., for International Union of Operating Engineers, Local 513, appellee.

Before HEANEY, BRIGHT and JOHN R. GIBSON, Circuit Judges.

BRIGHT, Circuit Judge.

Daniel Construction Company (Daniel) brought suit in district court, under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1982), seeking to have the court vacate part of the decision of an arbitrator, rendered under the binding arbitration provisions of Daniel's labor agreement with Local 513 of the International Union of Operating Engineers (Union). The district court[1], on cross-motions for

---

**1.** The Honorable James H. Meredith, United States Senior District Judge for the Eastern District of Missouri.

summary judgment, refused to set aside the portion of the award to which Daniel objected, and dismissed Daniel's suit with prejudice. Daniel now appeals. We affirm.

## I. *Background.*

Daniel is building a nuclear power facility in Calloway County, Missouri for Union Electric Company. Daniel has a cost-plus contract with Union Electric, under which Union Electric periodically reimburses Daniel for the expenses it incurs in building the Calloway facility. Union Electric also pays Daniel a management fee calculated as a percentage of reimbursable costs.

At the outset of construction in 1975, Daniel entered a project agreement with seventeen unions whose members were to work at the Calloway site, including the appellee Union. The agreement forbade the unions to "permit, encourage or condone any strikes" or other refusals to work. The agreement also provided for the submission of disputes arising under the agreement to a neutral arbitrator whose decision would be final and binding.

The agreement provided that when weather or other conditions beyond Daniel's control made work at the project site infeasible, Daniel could send affected employees home, paying them two hours' salary as compensation for having travelled to the worksite.

On October 13, 1981, Daniel informed certain members of the appellee Union, upon their arrival at the Calloway site, that the ground was too wet for them to perform their task of loading and hauling dirt. Previously, whenever wet ground conditions had made it necessary to send an arriving shift of workers home, Daniel had permitted the affected employees to remain at the site long enough to arrange rides home with other employees. On October 13, however, Daniel's foreman ordered the idled dirt crew to leave the premises immediately, thus depriving them of any opportunity to arrange for rides home.

The Calloway site was a considerable distance from the nearest town, so car-pooling to and from work was common among those who worked there. The order that the dirt crew immediately leave inconvenienced not only those idled workers who depended on non-idled workers for rides, but also those non-idled workers who depended on idled workers for rides. When the order was given, the union shop steward and shop foreman informed Daniel's general equipment superintendent that the order would disrupt the car-pooling arrangements. After the superintendent, in response, merely reiterated the order that the dirt crew leave immediately, the union steward told him that all the operating engineers would walk off the job. All but two in fact did so.

The strike continued through the next three shifts of employees. Each shift arrived at work, and walked off the job when the dirt crew was sent home because of poor ground conditions without any opportunity to arrange for rides. Finally, after four shifts had refused to work, the Union agreed to send representatives to the Calloway site to insure that the next shift of workers would stay on the job.

After the strike, Daniel filed a grievance, which led to the submission of the dispute to an arbitrator. Daniel submitted the following issues to arbitration:

A. Is this an arbitrable dispute?

B. Did Daniel act in accordance with the Project Agreement when it sent the backfill crew home?

C. Did the operating engineers strike or otherwise refuse to work in violation of Article IV, Section 2 of the Project Agreement?

D. Did the union violate the Project Agreement by permitting, encouraging or condoning the strike?

E. Did the union violate the Project Agreement by failing to take the necessary action to end the strike?

F. Is the union liable for the mass action of its members?

G. Does the Arbitrator have the authority to issue damages?

H. What items of damages are [sic] Daniel entitled to by law?

I. Can the union assert a defense under the collateral source rule?

Daniel argued that the strike by the operating engineers had, by disrupting the work schedule for the whole Calloway project, cost Daniel several hundreds of thousands of dollars. Daniel asked the arbitrator to order the Union to pay such damages as Daniel was entitled to by law.

The arbitrator agreed with Daniel that the dispute was arbitrable. He held that Daniel had acted within its rights under the project agreement in sending the dirt crew home. He ruled that the strike violated the no-strike clause of the agreement. The arbitrator also ruled that, although the Union was not responsible for the strike by the first shift of workers, the Union's failure to act to prevent the next three shifts from walking off the job amounted to a violation of the Union's agreement not to "permit, encourage or condone any strikes." None of these aspects of the arbitrator's decision is at issue in Daniel's suit under section 301.

The focus of this suit, rather, is on the arbitrator's conclusions regarding damages. Daniel argued before the arbitrator that the arbitrator had authority to award damages. Daniel presented evidence in support of its damage claims. Daniel also argued that the Union's strike damage liability should not be affected by any reimbursement for strike-related costs that Daniel might have received from Union Electric under the terms of the cost-plus construction contract.

The arbitrator held for the Union on the damages issue. He rejected some of Daniel's damage claims as too speculative, and concluded that in any event Daniel had suffered no real losses from the strike because Union Electric under the construction contract had reimbursed Daniel for all its costs, including those resulting from the strike.

Daniel challenged these holdings in district court. Daniel argued that the arbitrator's decision not to order the Union to pay damages would encourage strikes, failed to draw its essence from the labor agreement, and was based on a misunderstanding of the cost-plus contract and of the rule of law known as the collateral source doctrine.

Daniel appeals from the district court's dismissal of its suit. Specifically, Daniel asks this court to vacate that portion of the arbitrator's award that denies Daniel damages, and to remand the case to the arbitrator for the calculation of damages.

## II. *Discussion.*

■ Courts reviewing the decisions of arbitrators under section 301 of the Labor Management Relations Act do not sit to reconsider the merits of the dispute between the parties. Rather, "the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did give the arbitrator the power to make the award he made." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). This deference to decisions rendered by arbitrators follows from the courts' recognition that "[i]t was, after all, the *arbitrator's* judgment and interpretation for which the parties bargained when they agreed that disputes arising under the contract would be submitted to arbitration." *United Electrical, Radio and Machine Workers v. Litton Microwave Cooking Products,* 728 F.2d 970, 972 (8th Cir.1984) (en banc) (emphasis added). It is ordinarily not the proper function of a reviewing court to set aside a decision rendered by an arbitrator within the scope of the arbitrator's jurisdiction, even where the court would itself have reached a different result had the merits been submitted to it in the first instance. *Id.* Nor is a party that has submitted an issue to binding arbitration entitled, after the arbitrator has rendered his decision, to have another tribunal reconsider the merits of the dispute.

■ In this case, there is little room for doubt that Daniel did agree to submit to

binding arbitration the precise issues that the arbitrator decided in the Union's favor, and that Daniel now seeks to have this court reconsider on their merits. The project agreement between Daniel and the Union permitted either party to seek arbitration "in the event that any dispute arises out of the interpretation or application of this Agreement." The agreement further provided that "[t]he decision by the arbitrator shall be final and binding upon all parties to this Agreement." Daniel itself invoked arbitration in this case, argued that the jurisdiction of the arbitrator included deciding whether Daniel was entitled to damages, and asked the arbitrator to decide these two questions:

What items of damages are [sic] Daniel entitled to by law?

Can the union assert a defense under the collateral source rule?

Daniel's decision to submit the damages issue to the arbitrator makes it unnecessary for us to consider whether, in the absence of a voluntary submission of the issue to the arbitrator by the parties, the arbitrator's jurisdiction under the contract would have extended to determining whether Daniel had suffered or was entitled to damages. There is no question in this case, however, that the issue was the arbitrator's to decide. Having submitted the damages question to the arbitrator, and having agreed in advance to be bound by the arbitrator's decision, Daniel cannot now expect this court to relieve it of the consequences of that decision.

Daniel argues that the arbitrator's decision fails to "draw its essence" from the labor agreement. See *United Steelworkers v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). The agreement forbids the arbitrator to alter or amend the provisions of the agreement, and, Daniel

contends, the arbitrator's decision not to assess damages violates the essence of the contract by effectively negating the no-strike clause.

We reject this argument.

■ The labor agreement neither requires nor forbids the assessment of damages as a remedy for violations of the no-strike clause. Daniel itself argued in arbitration that, under the contract, the damages question was within the arbitrator's power to decide. We cannot say that the arbitrator's decision not to award damages does violence to the terms of the agreement. The agreement is simply silent on the matter of remedies for violations of the no-strike clause.[2] The parties themselves left it up to the arbitrator to decide whether damages were appropriate.

■ Daniel also contends that the arbitrator's decision not to award damages will encourage strikes, in violation of public policy favoring the enforcement of no-strike clauses. We decline to set the award aside on that ground. Public policy does not prescribe any particular sanction for violations of no-strike clauses. Where, as here, the contract provides for arbitration, the arbitrator decides what remedy is appropriate, within the limits set by the contract. The contract in this case did not require the arbitrator to impose damages as a sanction. Public policy does not empower this court to override the decision of the arbitrator not to impose a particular sanction, where nothing in the contract requires that sanction, and where the parties themselves have asked the arbitrator to determine the appropriateness of the proposed sanction.[3]

■ The arbitrator determined that Daniel suffered no real losses resulting from the strike. We cannot agree with Daniel that the failure to award damages, where no loss was found to have been sustained,

---

2. We need not consider whether Daniel would have been entitled to sue the Union for damages had the question of damages not been submitted to arbitration.

3. The arbitrator's refusal to award damages in this case hardly left Daniel without recourse

against those responsible for the strike. Daniel in fact discharged a number of the union members involved in the strike, and most of those discharges were upheld by an arbitrator after the Union initiated grievance proceedings.

was improper.[4] Furthermore, we note that the public policy favoring the enforcement of no-strike clauses is counterpoised against the equally important public policy favoring the arbitration of labor-management disputes. *See* 29 U.S.C. § 173(d) (1982); *United Steelworkers v. Warrior & Gulf Navigation Co., supra,* 363 U.S. at 577–78, 80 S.Ct. at 1350–51. We would offend that policy were we to vacate the arbitrator's award in this case. *See United Steelworkers v. Enterprise Wheel and Car Corp., supra,* 363 U.S. at 596, 80 S.Ct. at 1360 ("The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards.").

In refusing to set aside the arbitrator's award, we imply neither approval nor disapproval of the arbitrator's reasoning or result. In particular, we express no view as to the persuasiveness of the distinction the arbitrator drew between the dispute before him and the dispute at issue in *Mason-Rust v. Laborers' International Union, Local 42,* 435 F.2d 939 (8th Cir.1970), on the question whether payments to a contractor under a cost-plus contract covering the costs of a prohibited strike extinguish a responsible union's liability for damages.[5] Our view as to the merits of a decision rendered by an arbitrator on an issue within his jurisdiction is simply irrelevant, once we have determined that the issue was indeed the arbitrator's to decide. In this case, therefore, though we do not necessarily agree with the arbitrator's interpretation of our *Mason-Rust* decision, we cannot say that the parties did not get what they bargained for and requested: a decision by the arbitrator on the question of damages. Submitting a dispute to arbitration carries with it the risk that the arbitrator will render a different decision than a court might have reached. Such differences alone, however, do not justify a court in setting aside an arbitrator's decision. The decision at issue here, though perhaps not the decision we would have reached, neither violates nor alters the terms of the labor agreement nor contravenes public policy. Nor is there any evidence that the arbitrator "abused the trust the parties confided in him." *United Steelworkers v. Enterprise Wheel and Car Corp., supra,* 363 U.S. at 598, 80 S.Ct. at 1361. Therefore we refuse to vacate the arbitrator's decision.

The arbitrator's decision, then, binds Daniel in this case, because Daniel agreed to be bound, and because the arbitrator "stayed within the areas marked out for his consideration," *id.,* deciding precisely the issues that Daniel asked him to decide. The arbitrator's decision is no less binding because this court, or some other, might have decided the dispute differently. Daniel got the decision for which it bargained, namely, the decision of the arbitrator, and it is not for the courts to say that Daniel need not abide by that decision.

Affirmed.

---

**4.** The arbitrator found that, because Union Electric had reimbursed Daniel for its construction costs, including those attributable to the strike, the strike had not cost Daniel money. The district court agreed, in light of Daniel's failure either to deny that it had received compensation from Union Electric or to point out any provision of the construction contract that required Daniel to repay Union Electric the amount of any strike-related costs. Daniel indeed appears to have received full compensation from Union Electric for losses resulting from the strike.

**5.** In *Mason-Rust,* a union engaged in a jurisdictional strike, in violation of section 303 of the Labor Management Relations Act, against Mason-Rust, a construction contractor working under a cost-plus contract with the Army. We held that the contractor was injured by the strike, and entitled to damages from the union, even though it had been reimbursed by the Army for strike losses under the cost-plus construction contract.

The arbitrator in this case distinguished *Mason-Rust* on the ground that the strike in *Mason-Rust* violated a statute (section 303), and resembled a tort, whereas the strike in this case merely violated a contract. He also observed that, in *Mason-Rust,* the contractor had not been reimbursed as of the time proceedings were instituted against the union, whereas here, Daniel received reimbursement *before* the damages question was submitted to arbitration.