**WILLOUGHBY ROOFING & SUPPLY COMPANY, INC., Plaintiff,**

v.

**KAJIMA INTERNATIONAL, INC., Defendant.**

**Civ. A. No. CV82–L–5556–NE.**

United States District Court, N.D. Alabama, Northeastern Division.

Dec. 6, 1984.

Ralph W. Hornsby, David H. Meginniss, Hornsby, Blankenship, Robinson & Meginniss, Huntsville, Ala., for plaintiff.

Robert O. Fleming, Jr., Smith & Fleming, Atlanta, Ga., Philip A. Geddes, Decatur, Ala., for defendant.

## MEMORANDUM OPINION *

LYNNE, Senior District Judge.

This matter comes before the Court on the plaintiff's application for judgment. The plaintiff's fraud, breach of contract, and related claims have been submitted to an arbitration panel at the insistence of the defendant. The arbitrators, having considered those claims and having found them meritorious, have awarded the plaintiffs $41,091.25 in compensatory damages. In addition, because they found the defendant guilty of willful misrepresentations of

* The Court acknowledges the exceptional contribution of Michael R. Pennington, Law Clerk, to the preparation of this opinion.

material fact concerning the transaction at issue, the arbitrators have awarded the plaintiffs the further sum of $108,908.75 in punitive damages. However, the defendant, once the champion of the need for arbitration in this case, now expresses dissatisfaction with the results achieved by that process. Having once argued strenuously that the arbitration clause contained in the parties' contract required arbitration of all of the plaintiff's claims,[1] the defendant now seeks to qualify its previous position. Now, for the first time, the defendant argues that the arbitration panel lacked authority to consider the plaintiff's claims for punitive damages. On this basis, the defendant has filed a motion to vacate the award of punitive damages.[2] Because the Court is satisfied that the arbitrators' award was within the broad scope of their authority under the contract and under law, the defendant's motion will be overruled and judgment entered in accordance with the arbitral award.

## BACKGROUND

This action began when the plaintiff, Willoughby Roofing & Supply Company ("Willoughby Roofing"), filed suit in the Circuit Court of Madison County, Alabama. The complaint sought compensatory and punitive damages for breach of contract, fraud, misrepresentation, and breach of the duty of good faith and fair dealing by the defendant, Kajima International, Inc. ("Kajima"). These claims emanated from a contract between the parties whereby plaintiff, as subcontractor, was to construct and install a roof on a building for Kajima, the general contractor on a certain construction project in Huntsville, Alabama. Willoughby Roofing had allegedly prepared its bid on the roofing job in reliance on certain representations by Kajima as to the plans and specifications that would have to be followed in constructing the roof. Following acceptance of Willoughby Roofing's

bid, however, those plans and specifications were materially altered by Kajima, so much so that the cost to the plaintiff of completing the contract would have been substantially higher than anticipated. Therefore, Willoughby sought to renegotiate the contract price or to submit a new bid. Despite the fact that Willoughby had gone to considerable expense in preparing to fulfill the contract under the original specifications, Kajima chose instead to cancel the contract and engage another subcontractor to do the work.

It was at this point that the state court action was filed. Shortly thereafter, the case was removed to this Court by the defendant. Following removal, the defendant filed a motion for a stay of the proceedings pending arbitration. This motion was based upon the arbitration clause of the contract between the parties:

Section 6.07. *Arbitration.*

All claims, disputes, and other matters in question arising out of, or relating to, this Agreement or a Work Assignment or the breach thereof, except with respect to matters for which the Architect's decision shall be final and binding as provided in this Agreement, shall be resolved by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association unless the parties mutually agree otherwise. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

This arbitration clause is, of course, quite broad, and it evinces an intent of the parties to vest the arbitrators with authority to decide virtually any claim that could arise in relation to the contract and its

---

**1.** *See* Defendant's Memorandum in Support of Motion to Stay Judicial Proceedings Pending Arbitration, at p. 8.

**2.** The defendant also moved to vacate or modify the award of compensatory damages, alleging a lack of evidence to support certain aspects of the award. These contentions have been overruled by a separate order.

performance. Indeed, as the defendant itself aptly argued in support of its motion for a stay pending arbitration,

> ... the arbitration procedure applies to *all disputes* arising in connection with the subcontract. It would have been difficult, if not impossible, for the parties to have drafted a *broader* arbitration provision. This broad language, coupled with the national policy favoring a liberal construction of arbitration agreements, makes it clear that the disputes involved in this case are well within the scope of the arbitration agreement.[3]

Convinced that the arbitration clause did indeed cover all of the plaintiff's claims, including the claims for compensatory and punitive damages for fraud, *see generally Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), the Court granted the stay. An arbitration panel was selected, and the plaintiff's claims were presented to that panel. Finding those claims to be meritorious, the panel awarded the plaintiff $150,000 in unspecified damages.

At this point, the defendant first objected that the arbitrators had awarded punitive damages and that to do so was beyond their authority. In order to clarify the issue, the Court on April 26, 1984, ordered that the award be resubmitted to the same arbitration panel for an explicit breakdown of the claims for which damages were provided. Subsequently, on August 21, 1984, the panel issued the following award:[4]

> ... [W]e the undersigned Arbitrators find the following facts:
>
> 1. That KAJIMA INTERNATIONAL, INC., did in fact breach its contract to WILLOUGHBY ROOFING & SUPPLY CO., INC., and that the compensatory damages suffered by WILLOUGHBY

ROOFING & SUPPLY CO., INC., were $41,091.25.

> 2. We further find that KAJIMA INTERNATIONAL, INC., did make misrepresentations of material facts, that these facts were willfully made to deceive WILLOUGHBY ROOFING & SUPPLY CO., INC., that these misrepresentations were made by KAJIMA INTERNATIONAL, INC., to be relied upon by WILLOUGHBY ROOFING & SUPPLY CO., INC., and that in fact WILLOUGHBY ROOFING & SUPPLY CO., INC., did rely on these misrepresentations and that WILLOUGHBY ROOFING & SUPPLY CO., INC., suffered damages as a result of this reliance.
>
> For these wrongful acts of KAJIMA INTERNATIONAL, INC., we find that KAJIMA INTERNATIONAL, INC., should pay punitive damages of $108,908.15.
>
> Therefore, Arbitrators, AWARD as follows:
>
> A. Award compensatory damages in the amount of $41,091.25 to be paid by KAJIMA INTERNATIONAL, INC.
>
> B. Award punitive damages in the amount of $108,908.75 to be paid by KAJIMA INTERNATIONAL, INC.

Now unhappy with the bed it has made for itself, Kajima no longer wishes to lie in it. Consequently, Kajima now seeks an order vacating this award on two separate grounds: (1) the contract between the parties does not authorize the arbitrators to award punitive damages; and (2) even if the contract does authorize the arbitrators to make such an award, public policy prohibits them from doing so. As discussed below, however, neither of these arguments is sufficiently persuasive to displace the plenary deference traditionally owing to the decisions of arbitrators as a matter of federal policy.[5]

---

**3.** Defendant's Memorandum in Support of Motion to Stay Judicial Proceedings Pending Arbitration, at p. 8. (Emphasis in original).

**4.** This more explicit award, like its predecessor, was signed by only two of the three arbitrators on the panel.

**5.** Since the arbitration provision in this case is contained in a contract evidencing a transaction involving interstate commerce, the policies and provisions of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, govern all questions of the validity, interpretation, construction and enforceability of the arbitration agreement. *See Moses H. Cone Memorial Hospital v. Mercury*

## DISCUSSION

### I.

The contention that the arbitration clause involved in this case is not broad enough to empower the arbitration panel to award punitive damages is one that must fail. As the defendant has candidly admitted, "it would have been difficult, if not impossible, for the parties to have drafted a *broader* arbitration provision." [6] Moreover, the arbitration clause incorporates by reference the Construction Industry Arbitration Rules. Rule 43 of those rules provides that

> The arbitrator may grant *any remedy or relief* which is just and equitable and within the terms of the agreement of the parties (emphasis supplied).

 When the extremely broad arbitration clause is read in light of the equally broad grant of remedial power in Rule 43, it is clear that the parties by their contract have authorized the arbitrators to award punitive damages. *Cf. Willis v. Shearson/American Express, Inc.*, 569 F.Supp. 821 (M.D.N.C.1983). The contract purports to place no limits on the remedial authority of the arbitrators, nor should one be implied to exclude the authority to award punitive damages. The parties certainly had the power to limit the arbitrator's ability to fashion appropriate remedies,[7] but they chose not to do so. As defendants have conceded, strong federal policy requires a liberal construction of arbitration agreements, not a strict one.[8] *See, e.g., United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 585, 80 S.Ct. 1347, 1354, 4 L.Ed.2d 1409 (1960). In resolving questions pertaining to the arbitrator's authority, courts must broadly construe the agreement and re-

solve all doubts in favor of the arbitrator's authority. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–942, 74 L.Ed.2d 765 (1983); *Lackawanna Leather Co. v. United Food & Commercial Workers*, 706 F.2d 228 (8th Cir.1983); *Daniel Construction Co. v. International Union of Operating Engineers, Local 513*, 570 F.Supp. 299 (E.D.Mo.1983), *aff'd* 738 F.2d 296 (8th Cir.1984). This is particularly true with respect to the remedial authority of arbitrators, for it is essential that arbitrators have a great deal of flexibility in fashioning remedies if the national policy favoring the settlement of disputes by arbitration is to have any real substance. *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). *See also Mogge v. District 8, International Association of Machinists*, 454 F.2d 510, 514 (7th Cir.1971); *Local 369, Bakery and Confectionery Workers I.U. v. Cotton Baking Co., Inc.*, 514 F.2d 1235, 1237 (5th Cir. 1975), *cert. denied* 423 U.S. 1055, 96 S.Ct. 786, 46 L.Ed.2d 644 (1976). Accordingly, federal policy places a heavy burden upon those claiming that arbitrators' awards exceed their authority. *Joint Board of Cloak, Skirt and Dressmakers Union v. Senco, Inc.*, 289 F.Supp. 513 (D.Mass.1968). *Accord, International Association of Machinists v. Texas Steel Co.*, 538 F.2d 1116, 1121 (5th Cir.1976), *cert. denied* 429 U.S. 1095, 97 S.Ct. 1110, 51 L.Ed.2d 542 (1977).

> [The] mandate clearly is that in interpreting [an] agreement and fashioning a remedy in accordance with that agreement, an arbitrator is given broad latitude and discretion. *His remedy need not be specifically authorized by the agreement.* And, so long as his remedy represents a

---

Construction Corp., 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–942, 74 L.Ed.2d 765 (1983). Therefore, the questions presented here will be analyzed in terms of "the body of federal substantive law of arbitrability, applicable to any agreement within the coverage of the Act." *Id.*

**6.** See note 3, *supra*, and accompanying text.

**7.** Arbitration clauses expressly withholding from arbitrators the authority to decide claims

for punitive damages are certainly not uncommon. *See, e.g., Automotive, Petroleum and Allied Industries Employees Union, Local 618 v. Sears, Roebuck & Co.*, 581 F.Supp. 672 (E.D.Missouri 1984); *Humble Oil & Refining Co. v. Local Union 866*, 271 F.Supp. 281 (S.D.N.Y.1967).

**8.** *See* note 3, *supra*, and accompanying text.

fair solution to the dispute, the remedy awarded should be affirmed. Reviewing courts should be extremely reluctant to substitute their interpretation of the agreement for that of the arbitrator.... *[H]is awards should be upheld so long as he does not disregard or modify plain and unambiguous provisions of [the] agreement.*

*General Telephone Co. of Ohio v. Communications Workers of America,* 648 F.2d 452, 457 (6th Cir.1981) (emphasis supplied). *Accord, Lodge No. 12, District No. 37, International Association of Machinists v. Cameron Iron Works,* 292 F.2d 112, 119 (5th Cir.1961), *cert. denied* 368 U.S. 926, 82 S.Ct. 361, 7 L.Ed.2d 190 (1961) (arbitrator's remedy to be upheld in the absence of "clearly restrictive language" in the arbitration agreement); *Minute Maid Co. v. Citrus, Cannery, Food Processing and Allied Workers, etc.,* 331 F.2d 280, 281 (5th Cir.1964) (arbitrator's remedy upheld where the "contract did not exclude from arbitration either the subject matter or the remedy adopted by the arbiter"). *See also Sverdrup/ARO, Inc. v. International Association of Machinists,* 532 F.Supp. 143, 146 (E.D.Tenn.1980).

■ In the present case, the award of punitive damages is neither explicitly nor implicitly prohibited by the agreement. Indeed, it was all but expressly authorized. Although the defendant has cited certain labor cases which lend some support to the theory that an arbitrator has no power to award punitive damages absent express authority, *see, e.g., International Union of*

*Operating Engineers, Local No. 450 v. Mid-Valley, Inc.,* 347 F.Supp. 1104 (S.D. Tex.1972), and *Baltimore Regional Joint Board v. Webster Clothes, Inc.,* 596 F.2d 95 (4th Cir.1979),[9] this Court is convinced that such a restrictive presumption is contrary to the overriding principle under the Federal Arbitration Act that "any doubts concerning the scope of arbitrable issues," as well as any doubts concerning the scope of the arbitrators' remedial authority, are to be resolved in favor of the arbitrators' authority as a matter of federal law and policy. *See Moses H. Cone Memorial Hospital v. Mercury Construction Co.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–942, 74 L.Ed.2d 765 (1983); *Lodge No. 12 v. Cameron Iron Works,* 292 F.2d at 119; *Minute Maid,* 331 F.2d at 281; *General Telephone,* 648 F.2d at 457.[10] *See also United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. at 597, 80 S.Ct. at 1361. Only in the presence of "clear and express exclusions" could it be said that the arbitrators lacked authority under the contract to consider the plaintiff's claims for punitive damages. *Willis v. Shearson/American Express, Inc.,* 569 F.Supp. 821, 823–24 (M.D.N.C.1983); *Cameron Iron Works,* 292 F.2d at 119. No such exclusions are present, and in their absence the contract is clearly broad enough to authorize the arbitrators to consider the plaintiff's claim for punitive damages and to grant such relief where it is just and equitable to do so. *Cf. Willis,* 569 F.Supp. at 824.[11] Therefore, the contention that the contract itself denies the arbitrators the power to award

---

**9.** In truth, none of these cases actually involved factual findings or allegations sufficient to support the award of punitive damages under applicable substantive law. The case *sub judice* is decidedly different in this respect.

**10.** Even if other circuits may subscribe to the proposition that arbitrators have no authority to award punitive damages absent an express conferral of such authority, that is not the governing principle in this Circuit. Under the rule of *Bonner v. Prichard,* 661 F.2d 1206 (11th Cir. 1981), this Court is bound by the more liberal rules of construction enunciated by the Fifth Circuit in *Minute Maid* and *Cameron Iron Works.* Indeed, the old Fifth Circuit reversed at

least one district court for following the restrictive approach of the *Mid-Valley* case. *See Local 369, Bakery and Confectionery Workers I.U. v. Cotton Baking Co., Inc.,* 514 F.2d at 1237 (5th Cir.1975), *reversing* 377 F.Supp. 1172 (W.D.La. 1974).

**11.** The arbitration provision in the present case is even broader than that found to authorize the award of punitive damages in *Willis,* by virtue of the incorporation by reference of Rule 43 of the Construction Industry Arbitration Rules, which expressly authorizes the arbitrators to grant "any remedy or relief which is just and equitable...." *Compare Willis,* 569 F.Supp. at 822–23.

punitive damages is a contention that must fail.[12]

## II.

This brings us to the defendant's second contention. Does public policy prohibit the parties to a contract from vesting an arbitration panel with authority to consider their claims for punitive damages for fraud in the inducement or performance of the contract? The Court thinks not.

It is true, as Kajima points out, that certain state courts have held that under the law of those states arbitrators cannot award punitive damages even if the parties authorize them to do so. *See, e.g., Garrity v. Lyle Stuart, Inc.,* 40 N.Y.2d 354, 353 N.E.2d 793, 386 N.Y.S.2d 831 (1976); *School City of East Chicago, Indiana v. East Chicago Federation of Teachers,* 422 N.E.2d 656 (Ind.App.1981). Decisions such as those, however, deal only with the powers of arbitrators under state law and state public policy. Federal law and federal policy under the Federal Arbitration Act apply to the arbitration provision in the case *sub judice,* since that provision is part of a written contract evidencing a transaction in interstate commerce. 9 U.S.C. § 2 *et seq.* Even if Alabama law and policy were deemed consistent with that of New York and Indiana, it would not control the issue presented here, despite the stipulation contained in the contract that Alabama law would generally be deemed to govern the agreement. "Although the parties to a contract can agree that a certain state's law will govern the resolution of issues submitted to arbitration (*i.e.,* plaintiff's en-

titlement to punitive damages, assuming [a certain state's substantive] law applies), federal law governs the categories of claims subject to arbitration" and the "resolution of issues concerning the arbitration provision's interpretation, construction, validity, revocability, *and enforceability.*" *Willis v. Shearson/American Express, Inc.,* 569 F.Supp. 821, 823–24 (M.D.N.C. 1983) (emphasis supplied). *See also Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–942, 74 L.Ed.2d 765 (1983); *Tullis v. Kohlmeyer & Co.,* 551 F.2d 632 (5th Cir.1977); *Ultracashmere House, Ltd. v. Meyer,* 664 F.2d 1176, 1179–80 (11th Cir.1981). The Supreme Court recently made this clear in *Southland Corp. v. Keating,* —— U.S. ——, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). There, the high court of California had interpreted a state statute so as to require *judicial* consideration of claims brought under the statute and accordingly refused to enforce the parties' contract to arbitrate such claims. On appeal, the Supreme Court flatly held that "[s]o interpreted, the [state law] directly conflicts with § 2 of the Federal Arbitration Act and violates the Supremacy Clause." —— U.S. at —— – ——, 104 S.Ct. at 858, 79 L.Ed.2d at 11–12. Said the Court,

In enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of states to require a judicial forum

---

**12.** Even if the original arbitration clause were not broad enough in and of itself to authorize the award of punitive damages, by voluntarily submitting the plaintiff's fraud claims to arbitration without reservation of the claim made for punitive damages and without objecting to the authority of the arbitrators to award the claimed relief, Kajima in effect extended the authority of the arbitrators to include these matters. This is the rule of *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union,* 611 F.2d 580 (5th Cir.1980). *See also Graphic Arts International Union v. Haddon Craftsmen, Inc.,* 489 F.Supp. 1088 (M.D.Pa.1979) (a party

may not await an adverse arbitration award before asserting objections on grounds of which he had knowledge prior to the award); *Gibbons v. United Transportation Union,* 462 F.Supp. 838 (N.D.Ill.1978) (*accord*). *Cf. Kamakazi Music Corp. v. Robbins Music Corp.,* 684 F.2d 228, 231 (2d Cir.1982) (where alleged copyright infringer forced copyright holder to submit its claim for infringement to arbitration and urged arbitrator to consider all of the issues between the parties, copyright infringer by its conduct clearly agreed to submit all claims under Copyright Act to arbitrator, including copyright holder's claim for an award of attorneys' fees).

for the resolution of claims which the contracting parties agreed to resolve by arbitration.... We discern only two ·limitations on the enforceability of arbitration provisions governed by the Federal Arbitration Act: they must be part of a written contract evidencing a transaction in interstate commerce, and such clauses may be revoked upon 'grounds as exist at law or equity for the revocation of any contract.' We see nothing in the Act indicating that the broad principle of enforceability is subject to any additional limitations under state law.

— U.S. at ——, 104 S.Ct. at 858, 79 L.Ed.2d at 12.

■ *Southland Corp. v. Keating* firmly establishes that it is the "federal substantive law" of arbitrability that governs questions such as the one presented here. *Id.* — U.S. at ——, 104 S.Ct. at 859, 79 L.Ed.2d at 13. Therefore, if federal policy allows enforcement of an arbitration provision vesting the arbitrators with the authority to award punitive damages, then such a provision remains enforceable despite contrary state law or policy.

■ It is clear that federal policy does not prohibit the award of punitive damages by arbitrators if the parties' agreement is found to confer upon them the authority to make such an award. *Willis v. Shearson/American Express,* 569 F.Supp. at 824. Even the cases cited by Kajima in support of its contention that as a matter of contract construction, arbitrators do not have the authority to award punitive damages unless that authority is expressly conferred in the contract, are cases that clearly stand for the proposition that such an award is entirely consistent with federal policy whenever the agreement of the parties encompasses it. *See, e.g., United Electrical, Radio & Machine Workers v. Litton,* 704 F.2d 393 (8th Cir.1983), *on rehearing* 728 F.2d 970 (8th Cir.1984); *Norfolk &*

*Western Railway Co. v. Brotherhood of Railway, Airline & Steamship Clerks, etc.,* 657 F.2d 596 (4th Cir.1981); *Baltimore Regional Joint Board v. Webster Clothes,* 596 F.2d 95 (4th Cir.1979).[13]

Other cases stand for the same proposition. Thus, in *Sweeney v. Morganroth,* 451 F.Supp. 367 (S.D.N.Y.1978), the court rejected a claim that an arbitrator's award could not be enforced because it was punitive in nature. Said the Court:

Even assuming that the award is a penalty—no small assumption under either state or federal law—where, as here the contract expressly provides the arbitrator with the power to grant the award, and recognizing the substantial leeway which must be granted an arbitrator in fashioning remedies ..., the award seems wholly consistent with the prevailing law, both state and federal; it certainly does not evidence manifest disregard therefor.

451 F.Supp. at 370–71 (footnotes omitted). The *Garrity* case was noted but not followed. *Id.* at n. 7.

Similarly, in *Cadillac Auto Co. v. Metro Auto Salesmen,* 588 F.2d 315, 316 (1st Cir.1978), the First Circuit upheld an arbitral award despite its conclusion that the award was clearly punitive rather than compensatory. In *Ging v. Parker-Hunter, Inc.,* 544 F.Supp. 49 (W.D.Pa.1982), the court expressly referred claims for punitive damages to arbitration, implicitly holding that arbitrators have the authority to consider such claims and to grant the requested relief if their findings warrant it. In *Local 416, Sheetmetal Workers International Association v. Helgesteel Corp.,* 335 F.Supp. 812 (W.D.Wisc.1971), the court explicitly held that "[a]n award by an arbitrator of punitive damages ... is not, as defendant claims, illegal *per se.*" 335 F.Supp. at 815.[14] In *Texas Gas Transmission Corp. v. International Chemical Workers,* 200 F.Supp. 521 (W.D.Louisiana

---

**13.** While these cases are labor cases, the Court finds unconvincing the argument that labor cases are *sui generis* in this respect. The Arbitration Act provides no basis for such a distinction.

**14.** On appeal, *Helgesteel* was reversed on other grounds. 507 F.2d 1053 (7th Cir.1974).

1962), the Court, on rehearing, clearly upheld the power of an arbitrator to award punitive damages where he determines that the wrongful conduct of the defendant warrants such a sanction. The court relied heavily upon *Lodge No. 12, District No. 37, International Association of Machinists v. Cameron Iron Works*, 292 F.2d 112, 119 (5th Cir.1961), as mandating a broad construction of the remedial authority of arbitrators.

The old Fifth Circuit also sanctioned the award of punitive damages by arbitrators in appropriate cases, reasoning that the judiciary owes "considerable deference" to the decisions of arbitrators and that arbitrators "must ... be free to decide more than which party is right or which party is wrong." *Local 369, Bakery & Confectionery Workers Int. Union v. Cotton Baking Co., Inc.*, 514 F.2d 1235, 1237 (5th Cir. 1975). The Court emphasized that the arbitration provision was quite broad (as is the one in the case *sub judice*), purporting to cover "any dispute" arising out of the transaction involved. 514 F.2d at 1238.[15] This decision is, of course, the law of the Eleventh Circuit. *See Bonner v. Prichard*, 661 F.2d 1206 (11th Cir.1981).

Other cases lend varying degrees of support to the authority of arbitrators to make punitive awards.[16] Perhaps the most direct treatment of the federal policy on this issue, however, is found in *Willis v. Shearson/American Express*, 569 F.Supp. 821, 824 (M.D.N.C.1983).[17] There, on facts remarkably similar to those in the case *sub judice*, the court flatly rejected the *Garrity* line of cases in the context of arbitration agreements governed by the Federal Arbitration Act, pointing out that federal and not state policy controlled the power of arbitrators to award punitive damages. In a well-reasoned opinion, the court concluded that there was "no public policy reason persuasive enough to justify prohibiting arbitrators from resolving issues of punitive damages submitted by the parties." 569 F.Supp. at 824.

■ This Court agrees that there is no public policy bar which prevents arbitrators from considering claims for punitive damages. The Supreme Court has emphasized that the arbitration process can be a viable method of dispute resolution only if "it serves as a vehicle for handling any and all disputes that arise under the agreement," *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 567, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960), and only if the arbitrators are given a great deal of flexibility in the fashioning of appropriate remedies. *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).[18] The remedy of punitive damages is one to which a plaintiff is traditionally entitled under Alabama law[19] "when the fraud is malicious, oppressive or gross and the misrepresentation is made with knowledge of its falsity and with the purpose of injuring him." *Boulevard Chrysler-Plymouth v. Richardson*, 374 So.2d 857 (Ala.1979).

15. While the *Cotton* court was not entirely convinced that the award in that case was punitive, the Court held, in the alternative at least, that if the award was in fact punitive, it was nevertheless supported by the contract and hence enforceable. 514 F.2d at 1238 (discussion of *International Union of Operating Engineers v. Mid-Valley, Inc.*, 347 F.Supp. 1104 (S.D.Tex.1972)).

16. *See, e.g., Joint Board of Cloak, Skirt & Dressmakers Union v. Senco, Inc.*, 289 F.Supp. 513 (D.Mass.1968) (enforcing arbitral award which was allegedly punitive based partially upon the recognition of legal authority of arbitrators to make such an award).

17. It is disturbing to the Court that although *Willis* is the one federal case which most squarely addresses the issues presented here and flatly rejects the *Garrity* rule, neither side called the Court's attention to the existence of this close and direct precedent. Unfortunately, the same is true of many of the cases cited in this opinion.

18. In fact, it has been said that an arbitration panel's remedial discretion is so broad that it may sometimes grant equitable relief that even a court could not. *Sperry International Trade, Inc. v. Government of Israel*, 532 F.Supp. 901 (S.D.N.Y.1982).

19. The general right of recovery for fraud in Alabama is established by § 6–5–101 *Ala.Code* (1975).

That is precisely what the arbitrators found in this case. Where the arbitrators are concededly vested with the authority to hear and resolve the plaintiff's claim of fraud, it would be anomalous indeed to deny them remedial power commensurate with that authority. *Compare Teamsters Union, Local No. 115 v. DeSoto, Inc.,* 725 F.2d 931, 937 (3rd Cir.1984) (arbitrator's remedial power is as broad if not broader than the jurisdiction conferred upon him); *American Safety Equipment Corp. v. J.P. MaGuire & Co.,* 391 F.2d 821, 825 (2d Cir.1968) ("the *remedy* a statute provides for the violation of the statutory *right* it creates may be sought not only in 'any court of competent jurisdiction' but also in any other competent tribunal, such as arbitration, unless the *right itself* is of a character inappropriate for enforcement by arbitration") (emphasis supplied). To deny arbitrators the full range of remedial tools generally available under the law would be to hamstring arbitrators and to lessen the value and efficiency of arbitration as an alternative method of dispute resolution. *See* Note, *Arbitration: The Award of Punitive Damages as a Public Policy Question,* 43 Brooklyn L.Rev. 546, 551 (1976). *Compare United Steelworkers v. American Mfg. Co.,* 363 U.S. at 567, 80 S.Ct. at 1346. This would not sit well with the strong federal policy favoring arbitration.

■ The defendant insists, however, that because an award of punitive damages serves not only to punish the present wrongdoer for willful or wanton misconduct, but also to deter others in society at large, the power to award them should not be wielded by anyone other than a judge or jury. The defendant raises the spectre of overly partial arbiters manipulated by the party in a superior bargaining position, who may award punitive damages out of bias and prejudice. That spectre has more bark than bite, however, for the Arbitration Act expressly provides for the vacation of an arbitral award where the award was "procured by corruption, fraud or undue means," 9 U.S.C. § 10(a), or where there was "evident partiality or corruption in the arbitrators." 9 U.S.C. § 10(b). The mere possibility of bias or corruption no more justifies a wholesale withdrawal of the authority of arbitrators to make an award of punitive damages than it would a wholesale withdrawal of their authority to resolve disputes at all. If corruption or evident partiality in fact surfaces, naturally an award of punitive damages emanating from such circumstances should be set aside. Clearly, however, the possibility of an occasional abuse of power is no grounds for an absolute bar on the award of punitive damages by arbitrators.

Kajima also complains that to allow arbitrators to hear and decide claims for punitive damages is to displace the court and jury as an engine for imposing a social sanction designed more to punish and deter than to compensate. Of course, the argument that it is unfair to allow an arbitrator to displace a court and jury is one that has been sounded before. Not only litigants but state courts as well have questioned the ability of arbitrators to properly dispense justice. Many state courts have therefore declared contractual agreements to submit all disputes to arbitration to be totally unenforceable as a matter of public policy because they "defeat the jurisdiction of the courts." *See, e.g., Wells v. Mobile County Board of Realtors,* 387 So.2d 140 (Ala.1980). But Congress has enunciated a broad and pervasive federal policy that overrides all such arguments. That policy, embodied in the Arbitration Act, mandates that whenever a written contract evidencing a transaction in interstate commerce contains an arbitration provision, that provision must be given effect by state and federal courts alike, and that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–942, 74 L.Ed.2d 765 (1983). *Accord, Southland Corp. v. Keating,* —— U.S. ——, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). Indeed, the very purpose of the Act was to overrule longstanding judicial precedents which declared agreements to submit justiciable controversies to

arbitration to be contrary to public policy as displacing the functions of the courts. *Southland v. Keating,* — U.S. at —, —, 104 S.Ct. at 859, 860, 79 L.Ed.2d at 13, 14. *See also American Airlines, Inc. v. Louisville & Jefferson County Air Board,* 269 F.2d 811 (6th Cir.1959); *National Railroad Passenger Corp. v. Missouri Pacific Railway Co.,* 501 F.2d 423 (8th Cir.1974); *Ultracashmere House, Ltd. v. Meyer,* 664 F.2d 1176, 1180 (11th Cir. 1981). There is no reason to believe that the Act's mandate of enforceability did not extend to agreements to arbitrate issues of punitive damages. Nor is there reason to believe that the purposes of punitive awards—punishment of the present wrongdoer and deterrence of others who might otherwise engage in similar conduct—will not be furthered by arbitral awards every bit as much as by formal judicial awards. Indeed, an arbitrator steeped in the practice of a given trade is often better equipped than a judge not only to decide what behavior so transgresses the limits of acceptable commercial practice in that trade as to warrant a punitive award, but also to determine the amount of punitive damages needed to (1) adequately deter others in the trade from engaging in similar misconduct, and (2) punish the particular defendant in accordance with the magnitude of his misdeed. *See generally* Note, *Punitive Damages in Arbitration: The Search for a Workable Rule,* 63 Cornell L.Rev. 272 (1978).

The wisdom of allowing arbitrators to consider and resolve issues of punitive damages becomes all the more plain when we consider the practical effect of a contrary result. Defendant urges that merely by agreeing to arbitration, a plaintiff has automatically forfeited his right to punitive damages because arbitrators are prohibited

by public policy from awarding such damages. Thus, by entering an arbitration agreement the plaintiff has contractually waived his right to punitive damages. *Cf. Baselski v. Paine, Webber, Jackson & Curtis,* 514 F.Supp. 535, 543 (N.D.Ill.1981). *But compare Davis v. Chevy Chase Financial, Ltd.,* 667 F.2d 160, 165 (D.C.Cir. 1981) ("A party who consents to the inclusion in a contract of a limited arbitration clause does not thereby waive his right to a judicial hearing on the merits of a dispute not encompassed within the ambit of the clause"). Yet, not only would such a mandatory result seriously undermine the value and sufficiency of the arbitral process as a method of dispute resolution, it would also constitute a total frustration of the public policies and purposes served by punitive damage awards. Merely by agreeing to arbitrate a defendant could escape the monetary sanction of punitive damages that the law would otherwise impose upon him for gross and malicious conduct. Both the policies of deterrence and of punishment would be completely thwarted in a broad range of commercial transactions involving agreements to arbitrate. Moreover, granting such automatic immunity could well encourage grossly unjustified conduct in certain cases by making it more economically feasible. Surely that would be a much more serious distortion of public policy than vesting the authority to award such damages in an impartial and experienced arbiter.[20]

Even if the plaintiff who has agreed to arbitration is not deemed to have automatically waived his right to be heard on the issue of punitive damages, the practical effect of a bar on the arbitrability of such issues would be unsatisfactory. In essence, where tort and contract claims are mixed and punitive damages are sought, to

---

**20.** *Compare* Note, *Arbitration: the Award of Punitive Damages as a Public Policy Question,* 43 Brooklyn L.Rev. 546, 551 (1976): "The result [of application of the *Garrity* rule prohibiting arbitrators from awarding punitive damages] may be that incomplete recompense is made to an innocent party, while a guileful defendant is free to act with impunity without any fear of punitive sanction. Clearly, the imposition of

punitive sanctions might lead to an unfair result where, as in arbitration proceedings, a party could use his superior bargaining position to improper ends. Nevertheless, the policy favoring the complete and fair resolution of private disputes through arbitration will be likely to suffer as a result of the restriction the *Garrity* court has placed upon an arbitrator's power to award a full range of damages."

follow the *Garrity* rule in these circumstances would require two trials—one before the arbitrator and then "a separate judicial trial on essentially the same facts—obviously a wasteful exercise." Note, *Punitive Damages in Arbitration: The Search for a Workable Rule*, 63 Cornell L.Rev. at 299.[21] This would undermine the chief advantages and purposes of arbitration—to relieve congestion in the courts and to achieve a quick, inexpensive and binding resolution of all disputes that arise between the parties to an agreement. *See Ultracashmere House, Ltd. v. Meyer*, 664 F.2d 1176, 1179 (11th Cir.1981).

Where parties have selected arbitration as a means of dispute resolution, they have presumably done so in recognition of the speed and inexpensiveness of the arbitral process; federal courts ill serve these aims and that of the facilitation of commercial intercourse.... It is particularly necessary to accord the 'narrowest of readings' to the excess-of-authority provision of Section 10(d). That provision does not, it must be stressed, confer on courts a general equitable power to substitute a judicial resolution of a dispute for an arbitral one....

*Davis v. Chevy Chase Financial, Ltd.*, 667 F.2d at 164–165. Of course, where the parties expressly exclude certain claims or issues from their agreement to arbitrate, a certain amount of repetitiveness and the attendant failure to promote judicial economy may have to be tolerated. *Id.* But otherwise, the principles of arbitral flexibility, judicial deference to an arbitrator's superior knowledge of a given business, and extreme skepticism of judicial intrusion into the disputes parties have agreed to arbitrate all militate in favor of the simpler, more efficient and less costly option of allowing the arbitrator to handle "any and all disputes that arise under the agreement," including claims for punitive damages. *See United Steelworkers v. American Mfg. Co.*, 363 U.S. at 567, 80 S.Ct. at

1346; *Moses H. Cone Memorial Hospital v. Mercury Constr. Co.*, 460 U.S. at 24–25, 103 S.Ct. at 941–942. *See generally Southland Corp. v. Keating*, —— U.S. ——, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

## CONCLUSION

It may be, as the defendant belatedly claims, that the informalities and lack of judicial review attendant to arbitration render that method of dispute resolution less desirable than a full judicial trial when it comes to the airing of claims for punitive damages. But having chosen arbitration as the method of resolution of "all claims, disputes *and other matters* ... arising out of or relating to" its agreement with Willoughby Roofing, and having vested the arbitrators with authority to grant "any remedy or relief which is just and equitable," it may fairly be said that Kajima got what it bargained for. The words of Judge Learned Hand are most pertinent in this regard:

Arbitration may or may not be a desirable substitute for trials in courts; as to that the parties must decide in each instance. But when they have adopted it, they must be content with its informalities; they may not hedge it about with those procedural limitations which it is precisely its purpose to avoid. They must content themselves with looser approximations to the enforcement of their rights than those that the law accords them, when they resort to its machinery.

*American Almond Products Co. v. Consolidated Pecan Sales Co., Inc.*, 144 F.2d 448, 450 (2d Cir.1944).

**21.** *Compare Janmort Leasing, Inc. v. Econo-Car International, Inc.*, 475 F.Supp. 1282, 1291 (E.D. N.Y.1979) (where claims for punitive damages were "concededly inarbitrable" under contract, separate judicial trial would be had on the issue following arbitration of plaintiff's other claims). *See also Davis v. Chevy Chase Financial, Ltd.*, 667 F.2d 160, 165 (D.C.Cir.1981).

If parties to an arbitration agreement desire to exclude the issue of punitive damages from the consideration of an arbitrator and reserve it for judicial hearing, they are free to specify that in their contract. Otherwise, the strong federal policies favoring arbitrability of issues and remedial flexibility of arbitrators will govern. Those principles are dispositive of this case.

Accordingly, the motion to vacate or modify the arbitrator's award will be DENIED, and the Court will enter a judgment in accordance with the arbitral award.