## TUSKALOOSA BRIDGE CO. *vs.* JEMISON.

[JUDGMENT ON AWARD.]

1. *Construction of statutes respecting arbitrations.*—Statutory provisions in relation to arbitration should be liberally construed by the courts.
2. *Difference between arbitration under statute and at common law.*—Where a reference and award, though defective in some of the directory provisions of the statute, contain a substantial compliance with all its requisitions, (Code, §§ 2709-24,) they will be upheld as made under the statute.
3. *Requisites of submission.*—In a statutory reference of matters not existing in the form of a pending suit, it is not necessary that the matters in dispute should be stated with that degree of fullness and particularity which are requisite in pleading : the submission in this case is neither too concise nor too general, and sufficiently shows the character in which the parties are bound.
4. *Requisites of award.*—To sustain an award under the statute, it is sufficient that the arbitrators took the oath prescribed, gave the required notice, or had the parties personally present before them, and decided the matters submitted to them.

APPEAL from the Circuit Court of Tuskaloosa.

Tried before the Hon. WM. S. MUDD.

THIS was a motion to enter up an award of arbitrators as the judgment of the circuit court. The submission and award, on which the motion was predicated, were as follows :

"Tuskaloosa, January 13, 1858. At a meeting of the president and directors of the Tuskaloosa Bridge Company, pursuant to a call by the president, and held by appointment at the office of J. M. Van Hoose in the city of Tuskaloosa; Robert Jemison, jr., president, and Seth King, director, being present, and J. M. Van Hoose being appointed secretary, *pro tem.*,—the following resolution was adopted, to-wit :

"'*Resolved*, That the unsettled matters of account existing between Robert Jemison, jr., and the Tuskaloosa Bridge Company, which the parties have not been able to settle, be referred to the arbitrament of James M. Van Hoose and Newton L. Whitfield, who, in the event they

disagree about any matter connected with the arbitrament, are authorized to call in a third person to decide between them; the company, through its secretary and treasurer, Seth King, and the said Jemison, to submit to the said arbitrators all accounts, vouchers, letters, writings, and books of entry, relating to said matters of account between the parties, and to furnish a list of the witnesses to be examined, in due time to procure the attendance of said witnesses; the said arbitrators being hereby authorized and required to take testimony in the premises by deposition or otherwise, and to enter upon the settlement here submitted to them as soon as they [have] settled the matters connected with the bridge-company at Columbus, Mississippi, referred to them by the said Jemison and King.                    ·                    R. JEMISON, JR.,

President Tuskaloosa Bridge Co.

Seth King, Sec. and Treas.        R. JEMISON, JR.'

"In the matters of account between the Tuskaloosa Bridge Company and Robert Jemison, jr., referred to us by the parties by resolution of the board of directors of said company, passed at a called meeting of the directory on the —— day of ——, 1858, we, the arbitrators named in said resolution, having met at the office of J. M. Van Hoose, on the 27th January, 1858, pursuant to notice, and having taken the oath prescribed by statute for arbitrators in such cases, and the said parties being present, have this day entered on said matters of settlement. The said company, by Seth King, acting as its secretary, having filed the company's account against the said Jemison, and the said Jemison having filed his account against the said company, we have turned over to the respective parties said accounts for their mutual inspection, and adjourned, to meet at 3 o'clock, P. M. this day." (The award here sets out several meetings and adjournments of the arbitrators.) "February 24, 1858. Met pursuant to adjournment, the parties being present. Examined the lumber account of Jemison, and determined that it amounts to —— feet, and is worth $3,574 89. Examined also Jemison's account for labor on the bridge, and found that it amounts to $222 95; making a total of $3,777 84, besides

interest. The above amount is allowed, subject to errors; the interest on the same to be settled hereafter." "March 3, 1858. Having investigated and decided on the accounts of Seth King, treasurer and individually, against the said company, we resumed the investigation of the accounts of said Jemison against the company, and decided to allow his account for the lumber, and interest on the same as it is stated, to-wit, $3,777 84." "Met pursuant to adjournment. After further investigation, we decide to exclude the item of $800, extra cost on said bridge, charged against Jemison. We have allowed the amount of said company's account against Jemison, to-wit, the sum of $817 15, as stated. On making the account rendered, we find there is due said Jemison from said company the sum of $3,605 15, with interest from the 1st January, 1858. It is therefore our award, that said Tuskaloosa Bridge Company pay to said R. Jemison, jr., the sum of $3,605 15, with interest thereon from the 1st January, 1858. Given under our hands, this 4th March, 1858.

J. M. VAN HOOSE,
N. L. WHITFIELD."

The bill of exceptions states, that when the motion of Jemison, to have the award entered up as the judgment of the court, came on to be heard, "the defendant made sundry objections as to the defects and deficiency of the said motion, and of the submission and award; all of which were overruled by the court, and the defendant excepted."

The rendition of judgment on the award is the only matter assigned as error.

WILLIAM R. SMITH, for the appellant.

W. MOODY, contra.

RICE, C. J.—The adjustment of controversies, whether existing in the form of pending suits or not, by arbitration, has uniformly been much favored by legislation, as well as by the common law as understood in this State. Tankersley v. Richardson, 2 Stew. R. 130; Wright v. Bolton, 8 Ala. R. 548; Mobile Bay Road Co. v. Yeind,

29 Ala. 325. And it is fit that our courts should incline to a liberal construction of our statutory provisions in relation to arbitration.—Bingham's Trustee v. Guthrie, 7 Harris, 418. Such a course tends to advance the public interest, by putting an end to litigation, and discouraging multiplicity of suits; and the parties cannot complain of it, because the arbitrators are the judges of their own selection, and cannot assume jurisdiction outside of the submission, nor bind the parties beyond their consent, as evidenced in the submission.

Chapter 9, title 2, part 3 of the Code, (including the sections from number 2709 to 2724,) provides for the reference to the decision of arbitrators, to be chosen by the parties, of controversies pending in courts, and also for the reference of any controversy when no suit is pending. It declares explicitly, that "an award, made *substantially* in compliance with the provisions of this chapter, is conclusive between the parties thereto, and their privies, as to the matters submitted, and cannot be inquired into or impeached for want of form or irregularity, *if the award determines the matter or controversy submitted, and is final;* unless the arbitrators are guilty of fraud, partiality, or corruption, in making it.—Code, § 2721. And then follows a section in the following words, "Nothing in this chapter contained prevents any person or persons from settling any matters or controversy, by a reference to arbitration at common law."—Code, § 2722.

[2.] The most important question in this case, is, whether the reference and award are to be treated as a reference and award under the chapter of the Code above cited, or merely as a reference and award at common law. And in our judgment that question turns upon the answer to the inquiry, whether they are *substantially* in compliance with the provisions of the aforesaid chapter of the Code, and whether the award determines the matter or controversy submitted; for it is evident that several of the provisions of that chapter are *directory* merely, and that a compliance with them is not *essential* to give an award the character and qualities of an award made pursuant to the provisions of that chapter. Among these

*directory* provisions, we may mention the following—that which provides, that the parties shall state in writing that "*they desire* to leave the determination" of the matter in dispute to the persons named by them as arbitrators; and that which provides for a delivery to one or all of the arbitrators of "a list of the witnesses either party may desire to examine."

[3.] In relation to the submission, the point of substance, under the statute, is a concise statement in writing of the matter in dispute, signed by the parties, and a reference of the same to arbitrators of their own selection. By a concise statement of the matter in dispute, is not meant such a statement as would be necessary in pleading; its main object being to direct and confine the attention of the arbitrators to the subject submitted to their investigation and decision.

It is objected to the submission in this case, as we understand it, that it is too concise. We cannot sustain that objection. One of the objects and benefits of arbitrations is, that they relieve the parties, as well as the courts, of the embarrassment which frequently arises out of pleading.—Bingham's Trustee v. Guthrie, *supra*.

Another objection is, that the submission is too general. We do not think it is. In our judgment, it is sufficient. It contains an intelligible statement of the matters referred, and thus defines with reasonable certainty the boundaries within which the arbitrators were to confine their deliberations, and beyond which they were not to pass. The general words contained in it are restrained by the context, according to a sound rule of construction; and thus the matter in dispute which is referred, is sufficiently understood by the parties, the arbitrators and court. Scott v. Barnes, 7 Barr, 134; Malcolm v. Fullerton, 2 T. R. 646; Ross v. Watt, 16 Illinois R. 99; Watson on Arbitration and Awards, 15; Brady v. The Mayor of Brooklyn, 1 Barbour, 584.

Another objection is, that it does not appear from the submission, and the manner in which it was signed, that Jemison in his individual capacity is bound by the submission, or that the corporation is bound by it. The

objection is untenable. The form of a written submission is a matter of indifference, if it appears from it and the acts of the parties that they intended thereby to refer the matter in dispute stated in it, to the decision of the named arbitrators, and that their decision should have the effect of an award under the statute. And a submission may be made by a corporation, by a resolution or ordinance adopted at a meeting thereof.—Brady v. The Mayor of Brooklyn, *supra ;* The Mayor v. Butler, 1 Barb. 325.

[4.] In relation to the award, the point of substance, under the statute, is, that the arbitrators should take the oath prescribed, and should either give the notice prescribed, or have the parties before them, before they proceed to hear and determine the matters referred to them; and that a majority of them should make and sign an award determining the matter or controversy submitted. Code, § 2712–2721.

Without here noticing in detail all the objections made by the appellant, we are satisfied, after a thorough examination of them, that the submission and award must be treated as a submission and award under the chapter of . the Code above referred to; and that, therefore, it was right, under the facts presented in the record, to enter up the award as the judgment of the circuit court of Tuskaloosa county.—Code, § 2710.

Judgment affirmed.