R.P. Industries, Inc. ("RPI"), appeals from an order of the Lauderdale Circuit Court granting the motion of S M Equipment Company, Inc. ("S M"), seeking confirmation of an arbitration award; denying RPI's motion to vacate, modify, or correct the award; and entering a judgment in favor of S M and against RPI for the "net" amount of the award. We affirm.
The arbitration proceeding arose out of RPI's termination on February 21, 2001, of a paving subcontract it had awarded S M. On July 9, 2001, S M sued RPI and several other defendants in the Lauderdale Circuit Court. S M's complaint asserted claims of breach of contract, "account stated and/or open account," "work and labor done," enforcement of a mechanic's lien on the real estate improved, and a violation of Ala. Code 1975, § 8-29-1
et seq ("the Prompt Pay Act"). S M expressly claimed interest and attorney fees as a part of its damages.
On February 28, 2002, RPI filed a motion asking the court "to compel the parties to arbitrate this dispute" and to stay all proceedings pending the arbitration "of the merits of the underlying disputes." It attached to its motion, among other things, a copy of the subcontract between RPI and S M; that subcontract contained an arbitration provision. RPI predicated its right to enforce the arbitration agreement on the provisions of the Federal Arbitration Act, as codified at 9 U.S.C.A. § 1 et seq. ("the FAA").
On March 27, 2002, the trial court entered an order "transferring" the mechanic's lien to a bond that had been filed by RPI and its bond surety. On April 1, 2002, S M amended its complaint to acknowledge the filing and implementation of the lien-transfer bond and to request that a judgment be rendered against RPI and its surety. In that amendment, S M reasserted at length all of its prior claims, including the claim that RPI had violated the Prompt Pay Act.
The subcontract between RPI and S M contained the following arbitration provision:
 "Should a dispute arise between the parties, [RPI] shall reserve the option to require arbitration between the parties in accordance with the arbitration provisions *Page 462 
of the specifications. If the specifications do not address arbitration provisions, then the Construction Industry Arbitration Rules of the American Arbitration Association will govern. Any required arbitration proceedings will be held in Nashville, Tennessee."
On April 5, 2002, S M filed a "Consent to Arbitrate and Stay Litigation" and soon thereafter filed a "Demand for Arbitration" with the American Arbitration Association ("the AAA") under the AAA's Construction Industry Arbitration Rules ("the Rules"). (The parties agree that "the specifications do not address arbitration.") The Demand for Arbitration identified the nature of the dispute by referring to the attached amended complaint and stated the relief sought to be "in excess of $250,000," together with "interest, costs and attorney fees." A preliminary hearing was held at which the parties and representatives of the AAA were present, and on August 29 the AAA wrote the attorneys for S M and RPI to confirm that the following, in pertinent part, were the terms the parties had agreed to at the hearing:
 "The parties shall assert all claims on or before September 13, 2002.
". . . .
 "On or before January 27, 2003, each party shall serve and file a pre-hearing brief on all significant disputed issues, setting forth briefly the party's position and the supporting arguments and authorities.
 "All deadlines shown herein will be strictly enforced. After such deadline, the parties may not file such motions except with the permission of the arbitrators, good cause having been shown.
". . . .
 "The hearing has been set for February 10-13, 2003 the enclosed Notice of Hearing [sic]."
On February 3, 2003, S M served on RPI and the three arbitrators the parties had selected its "Motion for Summary Judgment/Arbitration Brief." In that submission, S M alleged, among other things, that "RPI unjustifiably terminated S M after substantial completion" and in a section captioned "Damages" included the following statements:
 "Under Alabama Code [1975,] §§ 8-29-3 and 8-29-6, S 
M is entitled to interest at 12% per annum and legal fees and costs arising out of RPI's failure to make payment. Interest from February 21, 2001, on the principal balance due totals $55,936.75 as of February 3, 2003.
 "S M will present evidence supporting the exact amount of legal costs incurred as a result of RPI's wrongful termination at the arbitration hearing. Such costs will include attorney fees, expert fees, legal fees and expenses, arbitration filing fees and arbitration expenses. S M's legal costs through February 3, 2002 are estimated to be in excess of $95,000.00."
Attached as exhibits to S M's submission were full reproductions of the cited sections of the Prompt Pay Act (§§8-29-3 and 8-29-6) and a voluminous collection of the billings to S M by its attorneys. The record does not reflect if the summary-judgment-motion aspect of that submission was ever ruled on. For all that appears in the record, RPI filed no opposition to the motion and filed no prehearing brief of its own; it did, however, file a counterclaim, seeking, among other relief, attorney fees on its own behalf.
The three-member arbitration panel conducted an evidentiary hearing February 10 through 13, 2003. On March 12, 2003, a unanimous panel issued an award, stating that it had "heard the allegations and proof of the parties in support of and *Page 463 
in response to the claims and counterclaims." It found that RPI had "breached the subcontract agreement by wrongfully terminating the subcontract agreement and failing to pay S M funds due under the subcontract agreement." The panel also found that "S 
M performed defective workmanship on portions of its work," entitling RPI to a partial recovery under its counterclaim. The panel awarded S M $182,740.35, the net difference between the amount due S M under the subcontract and the off-setting damages awarded to RPI. Additionally, and central to this appeal, the panel made the following additional awards:
"III. Interest
 "[RPI] shall pay to S M interest on the sum of $182,740.35¹ at the rate of 12 percent per annum from February 21, 2001, through the date of the close of the hearing of February 13, 2003 in the amount of $43,437.13, plus interest at the rate of $60.08 per day from February 14, 2003, until paid.²
". . . .
"IV. Attorneys' and Consultants' Fees
 "[RPI] shall pay to S M the sum of $108,067.00 in attorneys' fees pursuant to Ala. Code [1975,] § 8-29-6. S M's claim for expert's fees is denied. [RPI]'s counterclaims for attorneys' and consultants' are denied.
"¹ $229,521.35 less $46,781.00.
 "² Interest awarded and calculated on [the] unpaid subcontract balance pursuant to the Alabama Prompt Pay Statute, Ala. Code [1975,] § 8-29-3."
On March 25, 2003, S M filed in the Lauderdale Circuit Court its motion to confirm the arbitration award, relying upon the FAA, 9 U.S.C. § 9, and asking the trial court to enter a judgment in the amount of the award, including the accrued interest.
On April 25, 2003, RPI filed its response to S M's motion, which it styled, in the alternative, a motion to vacate, modify, or correct the award. RPI argued that the panel had "exceeded its authority" in awarding S M interest and attorney fees in addition to the amount due under the subcontract. RPI cited the FAA, 9 U.S.C. §§ 9, 10, and 11, as authority for the relief it sought. FAA, 9 U.S.C. § 10(a)(4) permits the vacation of an arbitration award "[w]here the arbitrators exceeded their powers. . . ." After conducting a hearing, the trial court confirmed the award on June 10, 2003, ordering the following, as pertinent to this appeal:
 "1. Judgment is hereby entered against the Defendants, . . . jointly and severally, in the amount of $155,709.83 in favor of [S M] (see accounting below):
"Principal $182,740.35 "Interest from 2/21/2001 to 2/13/2003 [included in the award] 43,437.13 "Attorney fees [included in the award] 108,067.00 "Interest at $60.08 per day from 2/14/03 to 4/25/03 [provided for in the award] 4,205.60 "TOTAL $338,450.08 "4/25/03 partial payment by [RPI] ($182,740.35) __________ "NET JUDGMENT $155,709.73
"and;
 "2. The judgment shall accrue interest at the statutory, post-judgment interest rate of twelve percent (12%) per annum, and all costs are taxed against Defendants . . .; and
 "3. The Defendant, [RPI]'s Response in Opposition to Plaintiff's Motion to Confirm Arbitration Award or, in the Alternative, Motion to Vacate, Modify, or Correct Said Award is denied. . . ."
RPI appealed, reasserting all of the arguments it made in the trial court to the effect that the panel had exceeded its authority in awarding S M interest and attorney fees under the authority of the Prompt Pay Act. *Page 464 
The standard of review applicable to a ruling on a motion to confirm or vacate an arbitration award was discussed in Maxus,Inc. v. Sciacca, 598 So.2d 1376, 1380-81 (Ala. 1992):
 "Where parties, as in this case, have agreed that disputes should go to arbitration, the role of the courts in reviewing the arbitration award is limited. Transit Casualty Co. v. Trenwick Reinsurance Co., 659 F.Supp. 1346 (S.D.N.Y. 1987), affirmed, 841 F.2d 1117 (2d Cir. 1988); Saxis Steamship Co. v. Multifacs International Traders, Inc., 375 F.2d 577
(2d Cir. 1967). On motions to confirm or to vacate an award, it is not the function of courts to agree or disagree with the reasoning of the arbitrators. Application of States Marine Corp. of Delaware, 127 F.Supp. 943 (S.D.N.Y. 1954). Courts are only to ascertain whether there exists one of the specific grounds for vacation of an award. Saxis Steamship Co. A court cannot set aside the arbitration award just because it disagrees with it; a policy allowing it to do so would undermine the federal policy of encouraging the settlement of disputes by arbitration. United Steelworkers of America v. Enterprise Wheel Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); Virgin Islands Nursing Association's Bargaining Unit v. Schneider, 668 F.2d 221 (3d Cir. 1981). An award should be vacated only where the party attacking the award clearly establishes one of the grounds specified [in 9 U.S.C. § 10]. Catz American Co. v. Pearl Grange Fruit Exchange, Inc., 292 F.Supp. 549 (S.D.N.Y. 1968)."
See also our further exposition of the standard of review inBirmingham News Co. v. Horn [Ms. 1020552, June 11, 2004] ___ So.2d ___, ___ (Ala. 2004), concerning not only the ground in9 U.S.C. § 10(a)(4) of vacatur when the arbitrators have "exceeded their powers" but also the ground of "manifest disregard of the law," a ground not asserted in this appeal.
In reviewing a challenge to an arbitration award on the basis that the arbitrators exceeded their powers, a circuit court, in the first instance, and this Court or the Court of Civil Appeals, at the appellate level, must bear in mind the narrow scope of that ground:
 "`We have consistently accorded the narrowest reading to section 10(d) [currently section 10(a)(4)], especially when it has been invoked in the context of the arbitrators' alleged failure to correctly decide a question which all concede to have been properly submitted in the first instance. Our inquiry under § 10(a)(4) thus focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue.'"
Birmingham News, ___ So.2d at ___ (quoting DiRussa v. DeanWitter Reynolds Inc., 121 F.3d 818, 824 (2d Cir. 1997)).
Even before the enactment of the FAA, our caselaw had considered the general concept that an arbitration award must conform to the power and authority accorded the arbitrators by the arbitrating parties. The following analysis appears inReynolds v. Reynolds, 15 Ala. 398, 403 (1849):
 "It is well settled, that an award must conform to the submission under which it is made. If, therefore, arbitrators transcend their authority, pro tanto their award will be void, and will stand good for the residue, unless that which is void, affects the merits of the submission, so that it cannot, without injustice, be separated from it; but if it forms the consideration for what the other party is required to do, the award will be void in toto. *Page 465 
 "All reasonable presumptions shall be made in favor of awards; and if, by the application of this principle, an award can be brought within the submission, and is in other respects unexceptionable, it will be sustained."
(Citations omitted.)
See also Tuskaloosa Bridge Co. v. Jemison, 33 Ala. 476
(1859), Ehrman v. Stanfield, 80 Ala. 118 (1885), andFlack-Beane Lumber Co. v. Bass, 258 Ala. 225, 228,62 So.2d 235, 238 (1952).
In H.L. Fuller Construction Co. v. Industrial DevelopmentBoard of the Town of Vincent, 590 So.2d 218 (Ala. 1991), this Court observed:
 "This is not to say that in arbitration cases governed by the FAA fraud claims in all circumstances must go to arbitration. Rather, federal policy recognizes that parties to a contract containing an arbitration agreement certainly have the power to limit the arbitrator's authority to consider certain claims, including fraud claims. See Willoughby Roofing [ Supply Co. v. Kajima Int'l, Inc., 598 F.Supp. 353 (N.D.Ala. 1984)]. However, in order to exclude a claim from arbitration, there must be an express provision within the original contract between the parties that excludes a particular grievance. See Pierson v. Dean, Witter, Reynolds, Inc., 742 F.2d 334 (7th Cir. 1984). Parties, through clear and express exclusions in the contract, have the power to limit the arbitrator's authority to decide certain claims. Willoughby Roofing.
". . . .
 "In resolving a question concerning the authority of the arbitrators, courts must broadly construe the agreement and resolve all doubts in favor of the arbitrators. Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Further, the Supreme Court has stated that if the national policy favoring the settlement of disputes by arbitration is to have any real substance, then it is essential that arbitrators have a great deal of flexibility in fashioning remedies. United Steelworkers of America v. Enterprise Wheel Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Thus there is a heavy burden on those claiming that the arbitrators' awards exceed their authority, and the arbitrator is given broad latitude and discretion. Willoughby Roofing, supra."
590 So.2d at 222-23.
 "The case law demonstrates a judicial belief that the arbitrators `powers' referred to in the first clause of § 10(a)(4) [of the FAA] are contractual in nature. It is the submission of issues to the arbitrator, and the definition of the arbitrator's authority as set forth in the arbitration agreement, that define section 10(a)(4)'s `exceeded powers' inquiry."
Stephen L. Hayford, A New Paradigm for Commercial Arbitration:Rethinking the Relationship Between Reasoned Awards and theJudicial Standards for Vacatur, 66 Geo. Wash. L.Rev. 443, 455-56 (March 1998) (footnotes omitted).
 "It is well-settled that the arbitrator's jurisdiction is defined by both the contract containing the arbitration clause and the submission agreement. Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Local No. 1, 611 F.2d 580, 583-84 (5th Cir. 1980). If the parties go beyond their promise to arbitrate and actually submit an issue to the arbitrator, we look both to the contract and to the scope of the submissions to the arbitrator to determine the arbitrator's authority. Id. at 584; see also United Food and Commercial *Page 466 Workers, Local Union No. 7R v. Safeway Stores, Inc., 889 F.2d 940, 946 (10th Cir. 1989); Sun Ship, Inc. v. Matson Navig. Co., 785 F.2d 59, 62 (3d Cir. 1986). Thus, the parties may agree to arbitration of disputes that they were not contractually compelled to submit to arbitration. Dorado Beach Hotel Corp. v. Union de Trabajadores de la Industria Gastronomica de Puerto Rico Local 610, 959 F.2d 2, 4 (1st Cir. 1992); Piggly Wiggly, 611 F.2d at 584. As we have already concluded, the parties agreed to allow the arbitrator to decide the issue of `Alleged loss of contracts due to equipment shortages and deficiencies.' Because the parties agreed to submission of this broad issue to the arbitrator, it is irrelevant to our decision whether Executone might have properly objected to submission of the issue on the grounds of non-arbitrability. Piggly Wiggly, 611 F.2d at 584-85.
 "In summary, the district court ordered the parties to submit all issues to the arbitrator for final resolution. Before the arbitration commenced, the arbitrator sent the parties a summary of the issues it would decide and advised the parties that one of the issues to be arbitrated was Isoetec's alleged loss of contracts due to deficiencies in Executone's equipment. Executone has cited nothing in the record to show that it responded to the summary in any way to disabuse the arbitrator of its view of the issues to be decided. The arbitrator's notice was broad enough to include the issue of the `loss' of the Stewart Title — Houston contract due to faulty equipment and software. Although we are not free from doubt regarding the arbitrator's interpretation of the scope of its mandate, `we resolve all doubts in favor of arbitration.' Valentine Sugars[, Inc. v. Donau Corp.], 981 F.2d [210] at 213 [(5th Cir. 1993)]. We conclude that the issue decided by the arbitrator was sufficiently submitted by the parties and therefore decline to reverse the arbitrator's interpretation of the scope of the Stewart Title issue."
Executone Info. Sys., Inc. v. Davis, 26 F.3d 1314, 1323-24 (5th Cir. 1994).
 "An arbitrator exceeds his powers when he `rule[s] on issues not presented to [him] by the parties.' See Fahnestock Co. v. Waltman, 935 F.2d 512, 515 (2d Cir. 1991) (citation and quotation marks omitted); 9 U.S.C. § 10(a)(4). Section 10(a)(4) of the FAA `focuses on whether the arbitrator had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrator correctly decided that issue.' DiRussa v. Dean Witter Reynolds, Inc., 121 F.3d 818, 824 (2d Cir. 1997). MVL contends that the arbitrator exceeded his powers by calculating Primary Year EBITDA [income from operations before certain enumerated expense and income items] in accordance with his understanding of the parties' intent, rather than in accordance with GAAP [generally accepted accounting principles]. The District Court concluded that § 10(a)(4) does not provide a basis for vacatur of the arbitration award because `MVL's contention that Sherrill failed to apply GAAP is best characterized as a challenge to his application of the law, rather than a challenge under Section 10(a)(4).' (Order, Aug. 30, 2002, at 30.)
 "We agree with the District Court. MVL does not contend that the arbitrator resolved an issue that the parties' agreement did not authorize him to resolve. Indeed, the only issue that he resolved — the calculation of Primary Year EBITDA — was the precise issue that the Amendment authorized him to decide. (Amendment to Stock Purchase Agreement § 1(d); Letter from Sherrill *Page 467 
to Morris and Smith of 8/15/01, at 4.) MVL does not argue that the arbitrator decided any issue other than the calculation of EBITDA; rather, MVL argues that he calculated EBITDA incorrectly. Even if MVL is correct, however, that argument provides no basis for vacating the award under § 10(a)(4). See DiRussa, 121 F.3d at 824 (`DiRussa's real objection appears to be that the arbitrators committed an obvious legal error in denying him attorney's fees. Section 10(a)(4) was not intended to apply to such a situation.')."
Hoeft v. MVL Group, Inc. 343 F.3d 57, 71-72 (2d Cir. 2003). See also Nationwide Mut. Ins. Co. v. Home Ins. Co., 330 F.3d 843, 846 (6th Cir. 2003); Buzas Baseball, Inc. v. Salt Lake Trappers,Inc., 925 P.2d 941 (Utah 1996); and Eljer Mfg., Inc. v. KowinDev. Corp., 14 F.3d 1250 (7th Cir. 1994).
As noted, the arbitration clause in the subcontract, drafted by RPI on its letterhead, broadly gave RPI the option to require arbitration of any "dispute [which might] arise between the parties." At the time relevant to this case, Section R-46 of the Rules provided, in pertinent part:
"R-46. Scope of Award
 "(a) The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, equitable relief and specific performance of a contract.
". . . .
 "(c) In the final award, the arbitrator shall assess fees, expenses, and compensation as provided in Sections R-52, R-53, and R-54. The arbitrator may apportion such fees, expenses, and compensation among the parties in such amounts as the arbitrator determines is appropriate.
"(d) The award of the arbitrator may include:
 "(a) interest at such rate and from such date as the arbitrator may deem appropriate; and
 "(b) an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement."
(Emphasis added.) (Section "R-52" referred to in R-46(c) appears in the record; sections "R-53" and "R-54," likewise referenced, do not.)
As a part of its Demand for Arbitration, S M submitted its amended complaint, which contained an explicit claim for interest and attorney fees based on RPI's alleged violation of the Prompt Pay Act. S M also explained separately in the Demand for Arbitration that the relief it sought included "Interest . . . and Attorneys Fees." Its combined summary-judgment motion and prehearing brief expressly reasserted its claim that it was entitled to interest and attorney fees under the two specifically cited sections of the Prompt Pay Act. The arbitrators conducted a four-day hearing on all of the "claims and counterclaims asserted . . . by the parties," which, at least as far as the claims of S M were concerned, were framed and defined by its amended complaint and its pre-hearing brief. According to S M in its brief to this Court:
 "RPI failed to properly or adequately apprise the arbitrators of their argument that S M's claim for attorneys' fees and interest should not be considered. RPI did not file an answer to either the original complaint or the amended complaint, both of which contained a count for attorneys' fees and interest under the Prompt Pay Act. RPI did not object to S M's Prompt Pay Act claim in its Motion to Compel Arbitration and Stay Litigation. RPI did not object to S M's claim for attorneys' fees and interest contained in the *Page 468 
demand for arbitration. RPI filed no objection to S 
M's Prompt Pay Act claim contained in S M's Motion for Summary Judgment filed with the arbitrators. It is undisputed that the first and only objection raised by RPI to S M's claim for attorney's fees and interest under the Prompt Pay Act was when RPI filed its Motion to Vacate, Modify and/or Correct the arbitration award, well after the issue had already been addressed and decided by the arbitrators."
(Emphasis in original.)
RPI counters in its reply brief, arguing:
 "When the issue was addressed at the arbitration hearing, it was RPI's position that 1) the parties' contract authorized an award of attorney's fees and interest only to RPI; and 2) the Prompt Pay Act did not authorize such an award to S M.
 "RPI's Answering Statement and Counterclaim made it clear that RPI denied that S M was entitled to any recovery."
(Emphasis in original.)
RPI acknowledges in its reply brief, however, that "there is no transcript of the arbitration proceedings," and we cannot locate in the record any copy of RPI's "Answering Statement and Counterclaim." Argument in a brief reciting matters not disclosed by the record cannot be considered on appeal, and the appellate record cannot be impeached by statements in a brief. Cooper v.Adams, 295 Ala. 58, 61, 322 So.2d 706, 708 (Ala. 1975).
In arguing to this Court that the panel exceeded its authority by awarding S M interest and attorney fees based on § 8-29-3
and § 8-29-6 of the Prompt Pay Act, RPI contends that the panel was not empowered to make such an award because, it says, (1) the Prompt Pay Act does not apply to an action to enforce a mechanic's lien; (2) only a trial court has the authority to award interest and attorney fees under the Prompt Pay Act; (3) S M did not "perform" in accordance with the contract, and §8-29-2 of the Prompt Pay Act specifies that "[p]erformance by a . . . subcontractor . . . in accordance with the provisions of [its] contract entitles [it] to payment from the party with whom [it] contract[s]"; and (4) the panel could not rely on the Prompt Pay Act because it made no finding that RPI had failed to make timely payments.
In terms of the interest award made by the panel to S M, §8-29-3 of the Prompt Pay Act, cited to the panel by S M, authorizes such an award, providing, in pertinent part:
 "(d) If . . . contractor . . . does not make payment in compliance with this chapter, the . . . contractor . . . shall be obligated to pay his or her . . . subcontractor . . . interest at the rate of one percent per month (12% per annum) on the unpaid balance due."
Regarding attorney fees, § 8-29-6, also cited to the panel by S 
M, provides, in pertinent part:
 "A . . . subcontractor . . . may file a civil action solely against the party contractually obligated for the payment of the amount claimed to recover the amount due plus the interest accrued in accordance with this chapter. If the court finds in the civil action that the . . . contractor . . . has not made payment in compliance with this chapter, the court shall award the interest specified in this chapter in addition to the amount due. In any such civil action, the party in whose favor a judgment is rendered shall be entitled to recover payment of reasonable attorneys' fees, court costs and reasonable expenses from the other party."
RPI contends that the above-quoted sections do not apply here. It notes that the *Page 469 
Prompt Pay Act also provides in § 8-29-8 that "[t]his chapter does not amend or modify existing laws relating to mechanics and materialmen liens and shall not be applicable in civil actions pursuant to Title 35, Chapter 11, Division 8." Thus, RPI argues that because S M's complaint was a civil action filed in order to enforce its claimed mechanic's lien, the prohibition stated in § 8-29-8 rendered the interest and attorney fee provisions of the Prompt Pay Act inapplicable, and the panel therefore exceeded its authority in awarding those items.
At the time relevant to this case, Section R-40 of the Rules stated:
"R-40. Waiver of Rules
 "Any party who proceeds with the arbitration after knowledge that any provision or requirement of them has not been complied with and who fails to state an objection in writing shall be deemed to have waived the right to object."
S M asserts that RPI waived any challenge to the inclusion in the award of interest and attorney fees because RPI did not object to the submission of the entire dispute to arbitration and because RPI did not submit a prehearing brief or interpose any objection or argument apprising the panel that RPI was taking the position that the panel lacked the authority to award interest and attorney fees under the Prompt Pay Act. There is no indication that any of the arbitrators had any legal training; two of them were clearly nonlawyer business executives. S M contends that RPI's failure to raise the issue that the panel supposedly did not have the authority to award interest or attorney fees under the Prompt Pay Act until after the panel had announced its decision, and even then not to the panel, makes its challenge in that regard untimely. S M's position is strongly supported by caselaw. In All American Termite Pest Control,Inc. v. Walker, 830 So.2d 736, 740 (Ala. 2002), this Court stated:
 "`Once a claimant submits to the authority of the arbitrator and pursues arbitration, he cannot suddenly change his mind and assert lack of authority,' even if the arbitrator has not yet rendered a decision. `In this case, neither party questioned the arbitrarily either of the dispute stated in the grievance or of the issues set forth in it; the entire grievance was presented to the arbitrator without reservation. . . . [T]he result is that the grievance submitted to the arbiter defines his authority without regard to whether the parties had a prior legal obligation to submit the dispute.'"
(Citations omitted.) See also Leon C. Baker, P.C. v. MerrillLynch, Pierce, Fenner Smith, Inc., 821 So.2d 158, 166 (Ala. 2001) ("`An objection to the arbitrability of a claim must be made on a timely basis, or it is waived,'" quoting ConnTech Dev.Co. v. University of Conn. Educ. Props., Inc., 102 F.3d 677, 685 (2d Cir. 1996)), Roscoe v. Jones, 571 So.2d 1043, 1045 (Ala. 1990) ("Because Roscoe availed himself of the arbitration provision by requesting arbitration, and did nothing to indicate an objection to the provision, he has effectively waived any right to dispute it's validity."), and McKee v. Hendrix,816 So.2d 30, 35 (Ala.Civ.App. 2001) ("Assuming that the arbitrator was precluded by the Warranty Agreement from awarding damages on the Hendrixes' claim for mental-anguish damages, we conclude that the defendants failed to timely and adequately apprise the arbitrator or the Hendrixes of their position on this issue. . . . We cannot say that the defendants properly or adequately apprised the arbitrator of their argument that he should not consider the claim for damages for mental anguish. Therefore, we affirm the trial court's refusal to vacate that portion of the arbitration award awarding damages for mental anguish."). *Page 470 
The fact that Section R-46 of the Rules governing the panel's authority expressly authorized an award of interest and an award of attorney fees when both parties "requested such an award" further imposed on RPI an obligation to bring to the attention of the panel any objection to its awarding those items based on the implications of the "mechanic's lien" exception of § 8-29-8. The record simply does not indicate that RPI made any objections based upon § 8-29-8 before the panel reached its decision; rather, the first objection RPI raised in that regard appearing in the record is the one it included in its motion to the trial court to vacate the arbitration award.
S M also argues that because RPI itself requested that the panel award attorney fees, Section R-46(d)(b) operated to authorize an award of attorney fees to either party.
Based on the record before us, we conclude that RPI waived any right to dispute, on the basis of § 8-29-8, the "power" of the panel to award, in response to the express claims submitted by S M and under the express provisions of Section R-46 of the Rules, interest and attorney fees. RPI purposefully availed itself of the arbitration process and proceedings conducted under the Rules and is thereby bound by all the features of that process.
Similarly, we find that the panel was not put on notice of RPI's contention on appeal that only a court, as opposed to a panel of arbitrators, can award interest and attorney fees under the Prompt Pay Act. The reference in the award to the fact that RPI "disputed and denied S M's claims, and asserted counterclaims . . . which claims were disputed and denied by S 
M" provides no support for the idea that the technical challenge now asserted was articulated to the panel. Unlike a court, a panel of lay arbitrators cannot be presumed to know and appreciate the full import of the law. Section R-46 expressly authorized the arbitrators to grant any relief they deemed just and equitable, including interest at such rate and from such date as they deemed appropriate and attorney fees where both parties had requested them or where such fees were authorized by law.
RPI's argument based on the language of § 8-29-2 of the Prompt Pay Act, which entitles a subcontractor to payment upon "[p]erformance . . . in accordance with the provisions of his or her contract," suffers the same fate. RPI argues that because the panel found that S M's workmanship on portions of its work had been defective, the panel could not have found that S M performed in accordance with the provisions of the subcontract. The panel expressly found, however, that RPI had breached the subcontract by wrongfully terminating it and by failing to pay S M funds due under the subcontract. The panel had the authority to decide those issues, and its findings do not demonstrate that it exceeded its power, which included determining the sufficiency of S M's performance under the subcontract. Lastly, RPI's claim that it in fact timely paid S M in accordance with the subcontract, relying on various circumstances it says in its brief to this Court it proved at the arbitration hearing, simply relates to matters outside of the record and cannot serve to show that the panel exceeded its assigned powers.
Having found no instance in the record establishing that the arbitrators exceeded their powers, we affirm the award.
AFFIRMED.
NABERS, C.J., and SEE, BROWN, and STUART, JJ., concur. *Page 471