STUART, Justice.
Guardian Builders, LLC, and E. Wayne Tackett (hereinafter referred to collectively as “Guardian”) appeal from an order of the Madison Circuit Court denying their motion to vacate or modify an arbitration award entered in favor of Randy Uselton and his wife Melissa Uselton. We reverse and remand.
*967 I.
This Court previously dismissed a premature appeal filed by Guardian in this action. Guardian Builders, LLG v. Uselton, 130 So.3d 179 (Ala.2013). At that time, we summarized the history of the parties’ dispute as follows:
“In April 2010, the Useltons sued Guardian in the Madison Circuit Court, alleging several claims arising from Guardian’s construction of a house for the Useltons. Guardian subsequently filed a motion to compel arbitration, and the circuit court granted that motion in October 2010. On December 21, 2011, the arbitrator entered a final award in favor of the Useltons in the amount of $452,275.20. On January 11, 2012, Guardian filed with the circuit court a motion to vacate or modify the arbitration award, to which it attached a copy of the arbitration award. On May 15, 2012, the Useltons filed a ‘motion to confirm’ the arbitration award and a response to Guardian’s motion to vacate or modify. On May 31, 2012, the circuit court entered an order purporting to deny Guardian’s motion to vacate or modify the arbitration award, purporting to grant the Useltons’ motion to confirm the arbitration award, and purporting to order Guardian to pay $1,421.75 in Better Business Bureau fees and facility costs related to the arbitration. Guardian appealed.”
130 So.3d at 180. However, before this Court considered the merits of Guardian’s arguments in that appeal, we noted that the clerk of the Madison Circuit Court had never entered the arbitration award as the judgment of that court; therefore, the trial court’s order purporting to deny Guardian’s motion to vacate or modify the arbitration award — the order being appealed— was void. 130 So.3d at 184. See Rule 71B(f), Ala. R. Civ. P. (stating that, after an appeal of an arbitration award is initiated in the circuit court, “[t]he clerk of the circuit court promptly shall enter the award as the final judgment of the court”). Accordingly, we vacated the trial court’s order and dismissed Guardian’s appeal, noting that, “[ejssentially, Guardian’s appeal remains pending in the circuit court, awaiting further procedures under Rule 71B.” 130 So.3d at 184.
On September 30, 2013, following our decision in Guardian Builders, the circuit court clerk entered the arbitration award in favor of the Useltons as the final judgment of the court pursuant to Rule 71B(f); on that same date Guardian moved the trial court to vacate or modify the award. Also that same day, the trial court denied Guardian’s motion and Guardian filed its notice of appeal to this Court.
II.
Guardian argues that the trial court erred by denying its motion to vacate or modify the arbitration award returned in favor of the Useltons and that, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (“the FAA”), the judgment adopting the arbitration 'award should be reversed.
“In R.P. Industries, Inc. v. S & M Equipment Co., 896 So.2d 460 (2004), this Court reviewed the trial court’s order granting a motion to confirm an arbitration award and denying the opposing party’s motion to vacate that award. We stated:
‘““Where parties, as in this case, have agreed that disputes should go to arbitration, the role of the courts in reviewing the arbitration award is limited. Transit Casualty Co. v. Trenwick Reinsurance Co., 659 F.Supp. 1346 (S.D.N.Y.1987), affirmed, 841 F.2d 1117 (2d Cir.1988); Saxis Steamship Co. v. Multifacs International *968 Traders, Inc., 375 F.2d 577 (2d Cir. 1967). On motions to confirm or to vacate an award, it is not the function of courts to agree or disagree with the reasoning of the arbitrators. Application of States Marine Corp. of Delaware, 127 F.Supp. 943 (S.D.N.Y.1954). Courts are only to ascertain whether there exists one of the specific grounds for vacation of an award. Saxis Steamship Co. A court cannot set aside the arbitration award just because it disagrees with it; a policy allowing it to do so would undermine the federal policy of encouraging the settlement of disputes by arbitration. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); Virgin Islands Nursing Association’s Bargaining Unit v. Schneider, 668 F.2d 221 (3d Cir.1981). An award should be vacated only where the party attacking the award clearly establishes one of the grounds specified [in 9 U.S.C. § 10]. Catz American Co. v. Pearl Grange Fruit Exchange, Inc., 292 F.Supp. 549 (S.D.N.Y.1968).” ’
“896 So.2d at 464 (quoting Maxus, Inc. v. Sciacca, 598 So.2d 1376, 1380-81 (Ala. 1992)). The standard by which an appellate court reviews a trial court’s order confirming an arbitration award under the Federal Arbitration Act is that questions of law are reviewed de novo and findings of fact are reviewed only for clear error. See Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1289 (11th Cir. 2002).”
Hereford v. D.R. Horton, Inc., 13 So.3d 375, 378 (Ala.2009).
On appeal, Guardian does not take issue with the essence of the decision made by the arbitrator: That Guardian Builders negligently constructed and delivered to the Useltons a house containing substantial defects and deficiencies and, as a result, the Useltons were entitled to certain damages. Rather, Guardian objects only to a subset of the damages that were awarded the Useltons that were not directly related to the poorly constructed house, specifically, attorney fees and arbitration fees (including both the arbitrator fee and the forum fee charged by the Better Business Bureau of North Alabama (“the BBB”), which administered the arbitration).
When the arbitrator issued his interim decision on November 22, 2011, he awarded the Useltons $305,711.05 in damages, a sum that included a $10,311.05 arbitrator fee. The arbitrator further stated in that decision that Guardian would be liable for the Useltons’ reasonable attorney fees and for the forum fee paid the BBB, and the arbitrator gave the Useltons 30 days to submit evidence of those costs. The Usel-tons’ attorney subsequently submitted to the arbitrator an affidavit indicating that his contract with the Useltons entitled him to 45% of any amount recovered and the repayment of all expenses; accordingly, he requested an additional $137,569.97 for his contingency fee and $8,994.21 in litigation expenses, which included $1,121.50 for the forum fee paid to the BBB. On December 21, 2011, the arbitrator, over Guardian’s objection that he lacked authority to award attorney and arbitration fees, issued his final decision awarding the Useltons a total of $452,275.20.[1]
Guardian argues that the arbitration agreement entered into by it and the *969 Useltons did not authorize the arbitrator to award attorney fees or arbitration fees and that the arbitrator accordingly exceeded his authority by awarding such fees. Thus, Guardian argues, the arbitration award should be vacated or modified pursuant to § 10(a)(4) of the FAA, which authorizes the vacatur of an arbitration award “where the arbitrators exceeded their powers.” This Court explained the analysis to which such a claim is subjected in R.P. Industries, Inc. v. S & M Equipment Co., 896 So.2d 460, 464-65 (2004):
“In reviewing a challenge to an arbitration award on the basis that the arbitrators exceeded their powers, a circuit court, in the first instance, and this Court or the Court of Civil Appeals, at the appellate level, must bear in mind the narrow scope of that ground:
“ ‘ “We have consistently accorded the narrowest reading to section 10(d) [currently section 10(a)(4) ], especially when it has been invoked in the context of the arbitrators’ alleged failure to correctly decide a question which all concede to have been properly submitted in the first instance. Our inquiry under § 10(a)(4) thus focuses on whether the arbitrators had the power, based on the parties’ submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue.” ’
“Birmingham News [Co. v. Horn ], 901 So.2d [27,] 47 [ (Ala.2004) ] (quoting DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 824 (2d Cir.1997)).
“Even before the enactment of the FAA, our caselaw had considered the general concept that an arbitration award must conform to the power and authority accorded the arbitrators by the arbitrating parties. The following analysis appears in Reynolds v. Reynolds, 15 Ala. 398, 403 (1849):
“ ‘It is well settled, that an award must conform to the submission under which it is made. If, therefore, arbitrators transcend their authority, pro tanto their award will be void, and will stand good for the residue, unless that which is void, affects the merits of the submission, so that it cannot, without injustice, be separated from it; but if it forms the consideration for what the other party is required to do, the award will be void in toto.
“ ‘All reasonable presumptions shall be made in favor of awards; and if, by the application of this principle, an award can be brought within the submission, and is in other respects unexceptionable, it will be sustained.’
“(Citations omitted.)”
III.
Before we can determine whether the arbitrator exceeded his power in awarding the Useltons attorney fees, we must first determine what authority Guardian and the Useltons granted the arbitrator. The arbitration provision in the construction agreement executed by the parties provides, in whole:
“Any disputes that cannot be settled through mediation shall be settled through binding arbitration. The BBB of North Alabama Mediation Center, an independent third party neutral, shall provide the binding arbitration service. A volunteer BBB arbitrator will render a decision he/she considers to be fair and just. The arbitration fees shall be based upon the current rate of the BBB of North Alabama Mediation Center and shall be paid by both parties. This agreement affects legal rights of both parties as they are agreeing to resolve the dispute between them described above by binding arbitration, rather than by litigation in any court other than *970 for claims that fall within the jurisdiction of small claims court.”
Thus, by the terms of the arbitration provision, Guardian and the Useltons empowered an arbitrator deciding a dispute between them submitted to him or her to render a decision “he/she considered] to be fair and just.” However, because Guardian and the Useltons further agreed that arbitration services would be provided by the BBB, any limitations to the arbitrator’s authority found in the BBB rules governing their dispute also apply. The BBB rules governing arbitration conducted pursuant to a binding predispute arbitration agreement do not expressly provide for or prohibit an award of attorney fees; however, they do contain the following provisions concerning an arbitrator’s authority:
“3. Remedies
“The arbitrator may award any remedy that is permitted under applicable law; provided, however, that the arbitrator may not award any remedies that the parties have agreed in writing may not be awarded in arbitration.
“29. The Decision
“A. Scope of decision
“A decision shall be one that: the arbitrator considers fair; is limited to the issues raised in the demand for arbitration and any counterclaim; and falls within the scope of these Rules.
“Unless otherwise provided by the agreement of the parties, the arbitrator is not bound to apply legal principles in reaching what the arbitrator considers to be a fair resolution of the dispute.
“D. Correcting the decision or reasons for decision
“You may request correction of the decision or the reasons for decision if you believe the decision or reasons contain a mistake of fact, a miscalculation of figures, or exceed the arbitrator’s authority.
“The arbitrator’s authority is limited to the scope of these Rules.”
Guardian argues that the BBB rules expressly limit the arbitrator’s authority to the scope of those rules and that the rules authorize an arbitrator to award only a remedy “that is permitted under applicable law.” The construction agreement provides that the applicable law in this case is “the law of the State of Alabama,” and, Guardian argues, “[i]t is well settled that ‘ “Alabama follows the ‘American rule.’ ” ’ ” Jones v. Regions Bank, 25 So.3d 427, 441 (Ala.2009) (quoting City of Bessemer v. McClain, 957 So.2d 1061, 1078 (Ala.2006), quoting in turn Battle v. City of Birmingham, 656 So.2d 344, 347 (Ala.1995)). The American rule generally provides that a prevailing party in litigation is not entitled to an award of attorney fees unless those fees are provided for by statute or by contract or if they are otherwise justified for certain equitable reasons. Classroom-direct, com, LLC v. Draphix, LLC, 992 So.2d 692, 710 (Ala.2008). There is no allegation in this case that any statute exists that would authorize an award of attorney fees for a cause of action such as the one brought by the Useltons, and it is undisputed that the parties did not agree by contract that the prevailing party in any dispute was entitled to compensation for their attorney fees.[2] Moreover, there *971 has been no argument, and we are aware of no authority, indicating that equity requires an award of attorney fees in this case.[3] Accordingly, Guardian argues, the arbitrator was without authority to award attorney fees to the Useltons because the American rule, which Guardian argues the arbitrator was bound to apply, does not allow such an award.
The Useltons, however, argue that the construction agreement empowered the arbitrator to grant any relief he considered “to be fair and just” and that the BBB rules reinforce this broad grant of authority inasmuch as those rules state that a decision shall be one that “the arbitrator considers fair.” Moreover, although Guardian emphasizes the provision in Rule 3 of the BBB rules stating that the arbitrator “may award any remedy that is permitted under applicable law,” the Useltons highlight the statement in Rule 29.A that “the arbitrator is not bound to apply legal principles in reaching what the arbitrator considers to be a fair resolution of the dispute.”
The Useltons also cite this Court’s decision in R.P. Industries, which, they say, supports their argument that Alabama law does not preclude an arbitrator from awarding attorney fees to the prevailing party. In R.P. Industries, this Court held that an arbitration panel did not exceed its powers in making an award of attorney fees, 896 So.2d at 470, and the Useltons note the similarity between the Construction Industry Arbitration Rules of the American Arbitration Association, which applied in that case and which provide that an arbitrator “ ‘may grant any remedy or relief that the arbitrator deems just and equitable,’” 896 So.2d at 467 (emphasis omitted), and the BBB rules in this case, which provide that the decision returned by the arbitrator shall be one that the arbitrator “considers fair.”
However, although R.P. Industries does provide some guidance for bur resolution of this case, its utility is ultimately limited by the fact that the Construction Industry Arbitration Rules of the American Arbitration Association expressly authorize “‘an award of attorneys’ fees if all parties have requested such an award,’” 896 So.2d at 467 (emphasis omitted); in fact, both parties in R.P. Industries did request attorney fees. 896 So.2d at 470. No equivalent BBB rule exists in the present case, however. Moreover, although some courts have held that parties to an arbitration have implicitly authorized an arbitrator to make an award of attorney fees when both parties have made a request for attorney fees — even in the absence of any express delegation of that authority in the relevant arbitration agreement or applicable arbitration rules — there is no evidence in the record indicating that the Useltons made a request for attorney fees in this case, either in their complaint filed pre-arbitration or during the course of the arbitration proceedings.[4] See Hollern v. Wachovia Sec., Inc., 458 F.3d 1169, 1174 (10th Cir. *972 2006) (noting that the parties’ contract containing an arbitration provision “did not expressly permit an award of attorneys’ fees” but that “the parties expressly empowered the arbitrators to award attorneys’ fees” by incorporating their pleadings containing “parallel requests for attorneys’ fees” into a uniform submission agreement). Thus, Guardian argues that the arbitrator exceeded his authority not only by awarding a remedy that is not permitted by applicable law (attorney fees), but also by ruling on an issue that was not submitted to him (attorney fees). See R.P. Industries, 896 So.2d at 466 (“ ‘An arbitrator exceeds his powers when he “rule[s] on issues not presented to [him] by the parties.” ’ ” (quoting Hoeft v. MVL Grp., Inc., 343 F.3d 57, 71 (2d Cir. 2003), quoting in turn Fahnestock & Co. v. Wattman, 935 F.2d 512, 515 (2d Cir. 1991))).
We agree with Guardian that the arbitrator exceeded his authority by awarding the Useltons attorney fees. The BBB rules expressly state that the arbitrator’s authority is limited by the scope of those rules and that he or she “may award any remedy that is permitted under applicable law.” This is to say that the arbitrator may award only those remedies permitted by applicable law, in this case, Alabama law. As discussed supra, Alabama generally follows the American rule, which provides that parties are responsible for their own attorney fees, and no argument has been made indicating that the facts of this case warrant an exception to the application, of that rule based on the existence of a relevant statute or agreement authorizing an award of attorney fees[5] or for other equitable reasons.
Moreover, we are not convinced by the Useltons’ argument that BBB Rule 29.A providing that the arbitrator “is not bound to apply legal principles in reaching what the arbitrator considers to be a fair resolution” is in conflict with, preempts, or creates ambiguity when considered in conjunction with, BBB Rule 3 limiting the arbitrator to awarding only those remedies “permitted under applicable law.” Written documents “are to be construed as a whole so as to harmonize their parts whenever possible.” Dudley v. Fridge, 443 So.2d 1207, 1211 (Ala.1983). Applying this principle to the BBB rules, one can see that although an arbitrator might not be bound to apply a specific legal principle, such as the Statute of Frauds, when reaching what he or she considers to be “a fair resolution” on the issue of liability, any remedy ultimately awarded must still be one “that is permitted under applicable law.”[6] Inasmuch as the arbitrator in this case awarded attorney fees to the Useltons, that remedy was not permitted under Alabama law, and the *973 arbitrator accordingly exceeded the scope of his authority by making that award.
IV.
We reach a similar conclusion with regard to the arbitration fees the arbitrator ordered Guardian to pay. As the Useltons correctly, note, court costs are distinguishable from attorney fees. See White Springs Agric. Chems., Inc. v. Glawson Invs. Corp., 660 F.3d 1277, 1282 (11th Cir.2011) (recognizing that a general demand for costs does not encompass a request for attorney fees). The American rule applied in Alabama generally prohibits a losing party from being ordered to pay the attorney fees incurred by the prevailing party, but the American rule does not prohibit an award of court costs to the prevailing party. In practice, such awards are commonplace and specifically authorized by Rule 54(d), Ala. R. Civ. P., which provides that, “[e]xcept when express provision therefor is made in a statute, costs shall be allowed as of course to the prevailing party unless the court otherwise directs.” Our Rule 54(d) is modeled on Rule 54(d), Fed.R.Civ.P., and, in Anderson v. Griffin, 397 F.3d 515, 522 (7th Cir.2005), the United States Court of Appeals for the Seventh Circuit offered an explanation for the differing treatment of court costs and attorney fees under the American rule:
“Last, the plaintiffs challenge the award of court costs pursuant to Fed. R.Civ.P. 54(d)(1). For obscure reasons, given the ‘American rule’ that requires each side to a lawsuit to bear its legal expenses rather than making the loser reimburse the winner’s reasonable expenses, the law allows the winning party to recover from the loser the winner’s ‘court costs,’ a stereotyped list of usually though not always modest items of expense, exclusive of legal fees. (They amount here to a shade under $13,000.) The rule is generally thought a vestige of the English ‘loser pays’ rule, e.g., John M. Blumers, Note, A Practice in Search of a Policy: Considerations of Relative Financial Standing in Cost Awards Under Federal Rule of Civil Procedure 51(d)(1), 75 B.U.L.Rev. 1541, 1562-63, 1566 (1995); insofar as the main objection to the English rule is that calculating a reasonable attorney’s fee is difficult and cumbersome, it falls away when the calculation is limited to the items taxable as costs. Baez v. U.S. Department of Justice, 684 F.2d 999, 1002-04 (D.C.Cir.1982) (en banc) (per curiam); see generally Vincennes Steel Corp. v. Miller, 94 F.2d 347, 348-49 (5th Cir.1938); Trinidad Asphalt Paving Co. v. Robinson, 52 F. 347 (E.D.Mich.1892); 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2665, pp. 199-202 (3d ed. 1998)....”
Assuming, therefore, that arbitration fees are the functional equivalent of court costs, an award of arbitration fees to the prevailing party in an arbitration proceeding might be a remedy permitted under Alabama law and thus within the authority of an arbitrator operating under the BBB rules unless there is a more specific provision in the parties’ agreement that would prevent such an award.[7] Precisely such a provision exists in this case.
The arbitration provision in the construction agreement executed by the Useltons and Guardian provides that “[t]he arbitration fees shall be based upon the *974 current rate of the BBB of North Alabama Mediation Center and shall be paid by both parties.” The Useltons acknowledge this provision; however, they argue that they were billed one-half the arbitration fees before the arbitration hearing and that they paid all fees that were billed to them. The BBB rules in fact indicate that payment of such fees is generally required before the arbitration hearing can proceed. See BBB Rule 4 (providing, in part, that the “BBB may decline to schedule an arbitration hearing if the parties do not pay administration fees when due”). Thus, the Useltons argue, they were required by contract to pay one-half the arbitration fees, and the arbitration hearing would not have occurred had they refused, but the arbitrator was nevertheless empowered to award them their costs at the conclusion of the arbitration hearing without violating the requirement in the contract that “the arbitration fees ... shall be paid by both parties.” Guardian counters by arguing that the provision is clear and must be enforced as written.
We agree with Guardian; the arbitrator exceeded his authority by ordering Guardian to pay the Useltons’ arbitration fees in light of the clear language in the arbitration provision requiring those fees to “be paid by both parties.” In Flack-Beane Lumber Co. v. Bass, 258 Ala. 225, 228, 62 So.2d 235, 238 (1952), we stated:
“The arbitrators’ jurisdiction, or authority to act, is derived from, and limited by, the arbitration agreement or submission, which forms the basis or foundation for their award, and, hence, it is essential that the award conform to, and comply with, the arbitration submission or agreement no matter what its form or kind.”
Inasmuch as the arbitrator awarded the Useltons their arbitration expenses, the award did not conform with the parties’ arbitration agreement and is, accordingly, due to be reversed.
V.
Finally, we consider the Useltons’ argument that, if any portion of the arbitration award is vacated, we must set aside the award in its entirety and remand the case for a new trial in the Madison Circuit Court. They state in their brief:
“Modifying or vacating any portion of the arbitrator’s award would destroy the entire intent of what he intended the [Useltons] to recover because the vacation or modification of the award to exclude attorney fees or an award of costs would result in the [Useltons’] receiving approximately $145,000 less than the arbitrator intended once attorney fees and expenses are deducted. Therefore, if any portion of the award is modified or vacated, all of the award must be vacated and this matter retried.”
The Useltons’ brief, p. '27. Thus, the Usel-tons’ argument is essentially that the arbitrator’s award should be vacated as it relates to the compensatory damages he awarded because those damages are now insufficient to make the Useltons whole. However, we have stated that a party seeking the vacation or modification of an arbitration award must frame its arguments by reference to § 10 (or § 11) of the FAA. Cavalier Mfg., Inc. v. Gant, 143 So.3d 762, 769 (Ala.2013). The Useltons have not cited the FAA, any other statute, or any caselaw in support of their argument that if any part of the entire arbitration award is vacated the entire award should be vacated, and we accordingly grant the argument no further consideration. See White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala. 2008) (“Rule 28(a)(10)[, Ala. R.App. P.,] requires that arguments in briefs contain *975 discussions of facts and relevant legal authorities that support the party’s position. If they do not, the arguments are waived.”).
VI.
Guardian appealed the .order of the' Madison Circuit Court denying Guardian’s motion to vacate or modify an arbitration award entered in favor of the Useltons because, Guardian argued, the arbitrator lacked the authority to award the Useltons attorney fees and arbitration fees. We agree that the arbitrator exceeded his authority by awarding those remedies. Attorney fees were not authorized by the parties’ agreement, and the BBB rules governing their arbitration limited the remedies available to the arbitrator to those permitted under Alabama law, which incorporates the American rule generally prohibiting losing parties from being ordered to pay the attorney fees of prevailing parties. Moreover, the arbitration provision in the construction agreement expressly provided that “the arbitration fees ... shall be paid by both parties.” Accordingly, the trial court’s judgment is reversed and the cause remanded for the trial court to enter a modified judgment subtracting attorney fees and arbitration fees from the award made to the Useltons.
REVERSED AND REMANDED.
BOLIN, PARKER, SHAW, MAIN, WISE, and BRYAN, JJ., concur.
MURDOCK, J., concurs in the rationale in part and concurs in the result.
MOORE, C.J., concurs in the result in part and dissents in part.

. The record before us does not explain why the amount awarded — $452,275.20—is $ .03 less than the sum of its parts — $305,711.05 initial damages award, $137,569.97 attorney fee, and $8,994.21 litigation expenses.

. The construction agreement did state under a section entitled "Late Payment” that the Useltons "shall pay all attorney fees incurred by [Guardian] to collect sums owed."

. This Court has previously recognized equitable exceptions to the American rule in proceedings where the attorney’s efforts create a common fund out of which fees may be paid or where there has been fraud, negligence, malice, or bad faith. Reynolds v. First Alabama Bank of Montgomery, N.A., 471 So.2d 1238, 1241-45 (Ala. 1985).

. In its brief, Guardian states:
"It was not until the arbitrator issued his ruling on November 22, 2011, over one month after the arbitration was concluded, that Guardian Builders was even aware that the arbitrator (1) considered and (2) decided to make an award for prevailing party attorney’s fees. The arbitrator never informed Guardian Builders during the arbitration proceedings that it would consider an award of attorney’s fees.”
Guardian’s brief, p. 21.

. An agreement authorizing an award of attorney fees could be explicit, such as a provision in an arbitration agreement specifically authorizing the award of attorney fees by the arbitrator or a provision in an arbitration agreement declaring that arbitration proceedings will be conducted pursuant to a set of rules that specifically allow the arbitrator to award attorney fees, or implicit, such as when all parties to an arbitration request that the arbitrator award attorney fees. However, no agreement of either sort exists in this case.

. Moreover, even if we were inclined to see conflict between Rules 3 and 29.A, we generally hold that a more specific provision controls over a general provision, and Rule 3, limiting an arbitrator to awarding only those remedies "permitted under applicable law,” is more relevant to the issue whether the arbitrator was empowered to order the payment of the opposing party's attorney fees as a remedy. See, e.g., ERA Commander Realty, Inc. v. Harrigan, 514 So.2d 1329, 1335 (Ala. 1987) ("When there is a conflict in a contract, the specific substantive provisions control over general provisions.”).

. Despite the obvious similarities, court costs and arbitration fees are distinguishable in some ways. Notably, as Anderson, 397 F.3d at 522, states, court costs are generally "modest.” This is because much of the expense is borne by the government sponsoring the court system deciding the dispute. No such subsidization exists with regard to arbitration.